BART S. ADAMS

*v.*

THE CROWN COAL AND TOW COMPANY *et al.*

*Opinion filed October 25, 1902.*

1. CONTRACTS—*compromise of doubtful right is sufficient consideration for a promise.* A compromise of a doubtful right, where there is neither actual nor constructive fraud and the parties act in good faith, is sufficient consideration to support a promise.

2. SAME—*when compromise agreement is binding.* If a compromise agreement is entered into in good faith and partly performed, the chancellor is right in refusing to regard the merits of the controversy as being open to litigation between the parties.

3. ESTOPPEL—*when party cannot say that proceeding was irregular.* If the parties voluntarily appear in a proceeding in the nature of a bill of interpleader and submit their controversies to the chancellor for decision, none of the parties can urge on appeal for the first time that the proceeding was irregular in matter of pleading or form of procedure.

*Adams* v. *Crown Coal and Tow Co.* 97 Ill. App. 254, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. M. W. SCHAEFER, Judge, presiding.

J. M. HOLMES, and KENT KOERNER, for appellant.

WEBB & WEBB, for appellee E. L. Thomas.

Mr. JUSTICE BOGGS delivered the opinion of the court:

At the September term, 1900, the circuit court of St. Clair county, in a proceeding in chancery instituted by the appellant, Adams, and the appellee John T. Taylor,

against the Crown Coal and Tow Company, awarded a money decree against said Crown Coal and Tow Company in favor of Adams in the sum of $2124.33, and a like decree in favor of Taylor in the sum of $952.66. On the 8th day of October, 1900, the said Crown Coal and Tow Company was served with written notice by the appellant, Adams, forbidding the payment of the amount found due him by the decree, or any part thereof, to any agent or attorney for himself, or to any one except himself in person. On the 15th day of October, 1900, the appellees E. L. Thomas and said John T. Taylor served the said company with the following notice:

"You will please notice that you will not pay more than one-third of the amount of the total sum of the decree in the above case to Bart S. Adams or his attorney, John M. Holmes. We further notify you that we, the undersigned, are the owners of two-thirds of said decree, and shall require you to pay the same to Webb & Webb, our attorneys. We hereby attach a copy of the agreement between ourselves and Bart S. Adams, showing interests of the several parties in the said decree.

EDWARD L. THOMAS,
JOHN T. TAYLOR."

There was attached to this notice a copy of the contract referred to in the notice, which read as follows:

"Whereas, a controversy has arisen between Bart S. Adams, E. L. Thomas and John T. Taylor over their respective rights and interests in the amounts due to them, respectively, from the Crown Coal and Tow Company; now, it is agreed between the three said parties, for the purpose of settling the said controversy and for the further purpose of settling and adjusting all claims and disputes between them arising from or growing out of their connection with the Crown Coal Company, that the judgment for $1900 and a fraction, be the same more or less, heretofore rendered by the circuit court of St. Clair county, Illinois, in the case of Bart S. Adams *vs.* Crown Coal and Tow Company, and the judgment heretofore rendered in the same court for $3200, be the same more or less, in the case of Bart S. Adams and John T. Taylor *vs.* The Crown Coal and Tow Company, and the judgment which may hereafter be rendered in the accounting suit of Bart S. Adams and John T. Taylor *vs.* the Crown Coal and Tow Company and pending in said court,

shall be deemed and considered as belonging to the said Bart S. Adams, E. L. Thomas and John T. Taylor, and the proceeds and avails thereof, after deducting therefrom the costs, fees and charges due on account thereof, shall be divided equally between the said three parties, as and when the same shall be realized.

"In witness whereof the said three parties have hereunto set their hands and seals this 3d day of February, A. D. 1898.

BART S. ADAMS,<br>
EDWARD L. THOMAS,<br>
JOHN T. TAYLOR."

On the said 15th day of October the said Crown Coal and Tow Company paid to the clerk of the said court the sum of $1021.20 for the use of said John T. Taylor. An execution was sued out on the decree on the 25th day of October, 1900, and a motion, upon due notice, was filed by the Crown Coal and Tow Company to quash the same. Taylor accepted, and was paid the sum so paid to the clerk for his use as in full of all that was due to him under the decree and the contract accompanying the notice signed by himself, Adams and Thomas, and had no further interest in the controversy. On a hearing of the motion the court ordered that upon payment to the clerk by November 5 of the sum of $1359.72, in addition to the $1021.20 theretofore paid, the sheriff should return the execution satisfied except as to costs, and that in default of such payment the execution should remain in full force, and said sum, if so paid, should remain in court until the court should determine who was entitled to receive it. The money was paid into court, and on the 26th day of November Bart S. Adams filed his petition and motion for a rule on the clerk to pay the same over to him, he claiming that the contract above quoted, between him and Thomas and Taylor, "was wholly without consideration, has not been observed by Thomas and Taylor," and that the charges for attorneys' fees are improper and excessive. The fund remaining in the court was $1359.72, and the interested parties, the appellant, Adams, and the appellees Thomas and the Crown Coal and Tow Company, voluntarily presented to the court

their claims to receive it. The Crown Coal and Tow Company claimed that it had settled with Adams and paid the full amount to him before it was ordered to pay it into court, and that therefore this money ought to be returned to it. Appellee Thomas and Webb & Webb claimed that it ought to be paid to them, as Thomas' share under the agreement and Webb & Webb's fees, being the "fees and charges due on account thereof," provided for in the agreement. Adams contended, as stated in his motion, that the contract was wholly without consideration and not kept by Thomas and Taylor, and that the attorney fees of Webb & Webb were improper and excessive, and that he, being the creditor, was entitled to the money. The court found that the appellant, Adams, had received from the decree debtor his full one-third of the total amount of said decree after his share of the fees, expenses and costs has been deducted; that the said John T. Taylor has also received his one-third of said decree, and that said Edward L. Thomas is entitled to the said $1359.72, after said expenses, fees and costs to the amount of $550 have been deducted therefrom. The appellant, Adams, carried the controversy, by appeal, to the Appellate Court for the Fourth District, and from the judgment of affirmance entered in that court has perfected this his further appeal to this court.

It appeared from the testimony that Adams, Taylor and Thomas owned the stock of a corporation called the Crown Coal Company; that the stock was so divided that Adams had something more than half, the remainder being divided in substantially equal amounts or shares between Taylor and Thomas; that Adams was the president and treasurer of the company and Taylor the mine superintendent; that Thomas had no office; that the Crown Coal Company was subsequently absorbed by the Crown Coal and Tow Company, a corporation, which latter corporation assumed all the debts of the former, and undertook the collection of the claims and indebtedness due

to the former for the benefit of the stockholders of the former corporation. The judgment for $1900 in favor of Adams and against the Crown Coal and Tow Company, mentioned in the agreement hereinbefore set out, was for indebtedness of the Crown Coal Company to Adams. The judgment referred to in the agreement as being for about the sum of $3200 was for the purchase price of the Harmony coal mine, which Adams and Taylor sold to the Crown Coal and Tow Company, and the other judgment referred to in the agreement as thereafter to be rendered in the accounting suit of Adams and Taylor against the Crown Coal and Tow Company was the decree subsequently rendered in the chancery proceeding in which the decree here appealed from was entered. The agreement between Adams, Thomas and Taylor was entered into during the pendency of the last mentioned suit, called the "accounting suit."

The contention of the appellant it should be held that the agreement was without consideration, and therefore not obligatory upon him, was properly overruled by the chancellor. It appeared from the evidence that the appellee Thomas contended that the appellant, Adams, who, it will be remembered, was president and treasurer of the Crown Coal Company, (the stock of which was owned by Adams, Thomas and Taylor,) was indebted to the said Crown Coal Company upon a settlement of his accounts as president and treasurer thereof; that the appellant had, out of the moneys in his hands as treasurer of said Crown Coal Company, paid to himself $200 per month for a number of years as for his salary, and had paid the same sum per month to Taylor on the like claim that such payment was for salary; that no salaries had been fixed or allowed to either of the said parties by said company; that Thomas, who lived in Belleville, went to St. Louis, where said Adams lived, and made known these claims to one J. M. Holmes, attorney for Adams, and that on the following day said Holmes came to Belle-

ville and brought with him the contract, which had already been signed by Adams in triplicate; that Taylor was averse to entering into the agreement, but after a consultation with Thomas and said Holmes both Thomas and Taylor consented to the agreement and each signed the same in triplicate.

The compromise of a doubtful right, where there is neither actual nor constructive fraud and the parties act in good faith, is sufficient consideration to support a promise. (*McKinley* v. *Watkins*, 13 Ill. 140; *Honeyman* v. *Jarvis*, 79 id. 318.) This would not be the rule if the claim to the right was put forth as a mere pretense, to extort money or to induce the execution of the agreement. But no such state of case here appears. In this case Thomas testified he told Mr. Holmes, appellant's attorney, that a Mr. Waddock, who had kept the books of Adams as treasurer of the Crown Coal Company, told him that Adams was in arrears with that company, and that moneys of the company had been improperly retained by Adams as for his salary as president and treasurer. This conversation was on the day before such attorney came to Belleville with the triplicate agreements signed by the appellant. Whether the charge was true that he was in arrears in his accounts as treasurer, or whether he had taken money out of the treasury of the coal company as for salary to which he was not entitled, were matters within the knowledge of the appellant, and with such knowledge the triplicate agreements were executed by him, and tendered, through his attorney, to those who would be the sufferers from his shortcomings as treasurer, (if any such shortcomings there were,) as a fair and proper mode of adjusting the rights and interests and claims of all the parties in interest. There is nothing in the proof to indicate that Thomas acted in bad faith in asserting a claim based upon the alleged shortage in the accounts of Adams as treasurer. The truth or falsity of the subject matter of the charge was within the knowl-

edge of Adams.  The claim, under the circumstances, constituted, in legal contemplation, the subject of compromise.  Subsequently, and while the proceeding which resulted in the decree out of which this appeal arose was pending and undetermined, the appellant and the other parties to the agreement adjusted and divided the judgments mentioned in the compromise agreement in accordance with the terms and conditions of that agreement, upon which adjustment the appellant received $500 from the said Thomas, for which a receipt was given stating that it was in full of all claims affected by the agreement, excepting the claims involved in the accounting suit, which was then pending.  The compromise having been entered into in good faith and partly performed, the chancellor correctly refused to regard the merits of the controversy upon which the compromise was effected as being open for litigation between the parties.  (6 Am. & Eng. Ency. of Law,—2d ed.—p. 714.)

The insistence that the appellant was prejudiced in the matter of the allowance of the attorney fees to Webb & Webb is wholly groundless.  The evidence clearly established that said attorneys rendered services as solicitors, and were fairly and justly entitled to receive the amounts allowed them as compensation therefor.  The contention of the appellant that no portion of the attorney fees should have been charged to him, ignores the stipulation in the compromise agreement that the "costs, fees and charges" accruing in the proceeding should be deducted from the amount recovered and the remainder divided equally between himself, Thomas and Taylor. The adjustment of the attorney fees resulted in Taylor paying less and Thomas more than he should, but appellant was only required to answer for his proportionate part of the costs and fees, and has no ground for complaint.

We do not think it appeared from the proof the Crown Coal and Tow Company paid more than it ought to pay

in satisfaction of the decree. Certainly, if the payments made by it did exceed, in the aggregate, the total decree debts and interest thereon, the excess consisted of amounts paid after the receipt of full notice of the rights of Taylor and Thomas.

The appellee company cannot now be heard to here urge that the circuit court was without jurisdiction to enter the decree or order appealed from. The proceeding is in nature analogous to a bill of interpleader. The court had jurisdiction of equitable remedies of that nature. The parties voluntarily appeared and submitted their controversies to the court, and the court thereby became invested with jurisdiction of the persons of the litigants. None of the parties can be allowed to urge in a court of review, for the first time, that the proceeding was irregular in matter of pleading or form of procedure.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*