AMOS W. WALKER

*v.*

EDNA S. SHEPARD *et al.*

*Opinion filed June 23, 1904.*

1. EVIDENCE—*certificate of acknowledgment is not conclusive of the grantor's capacity to contract.* The certificate of acknowledgment to a deed is evidence only of those matters to which the officer is required to certify, and it may be shown that the grantor was incapable of contracting at the time the acknowledgment was taken.

2. FIDUCIARY RELATIONS—*fiduciary relation need not involve legal duties.* A fiduciary relation sufficient to excite close scrutiny of a deed made for inadequate consideration exists, where the grantor, a woman of less than average intelligence, reposes confidence in the grantee, who is the son of the grantor's adopted father and is possessed of influence over the grantor.

3. DEEDS—*words "convey and warrant" convey the fee unless limited.* The words "convey and warrant" convey the fee unless they are limited to a lesser estate by words found in the granting clause of the deed or in the *habendum.*

4. SAME—*words merely expressing grantor's purpose do not limit estate conveyed.* Words contained in a deed which are merely expressive of the purpose animating the grantor in making it do not limit the estate conveyed.

5. SAME—*condition restricting alienation during grantee's lifetime is void.* A condition contained in a deed conveying and warranting the property to the grantee, that the grantee shall not alienate the property during her lifetime, it being the grantor's desire that the property shall be a support to the grantee during her natural life, does not create a life estate, but is void for repugnancy.

6. FRAUD—*when compromise agreement will not be upheld.* A compromise agreement will not be upheld, when attacked, if it appears the claim which was settled was not made in good faith, but as a pretense to compel a weak-minded woman to convey her property upon the threat that unless she did so the party asserting the claim would bring a suit in court and "take everything."

7. SAME—*when inadequacy of consideration is evidence of fraud.* Gross inadequacy of consideration for a deed is evidence of fraud which is of controlling importance, where the proof shows a feeble mind on the part of the grantor and undue advantage by the grantee.

APPEAL from the Circuit Court of Shelby county; the Hon. S. L. DWIGHT, Judge, presiding.

This is an appeal from a decree rendered by the circuit court of Shelby county setting aside a deed to the north half of the north-west quarter of section 29, town 10, north, range 5, east of the third principal meridian, in Shelby county, Illinois. The bill herein was filed by Anna E. Shepard (*nee* Small) on January 21, 1901, against Amos W. Walker, the appellant. On February 15, 1903, and prior to the hearing of said cause, Anna E. Shepard died and her three children and her husband were substituted as complainants, and they are appellees in this court. The pleadings consisted of bill, answer and replication. The hearing was before the chancellor. The facts in the case are substantially as follows:

Anna E. Shepard, the original complainant in this suit, was born about 1875. Her mother died when she was two weeks old, at which time she was taken to the home of Joseph Walker, a widower, who resided on a farm in Shelby county, and for whom her grandmother, Barbara Hartsell, had been engaged as house-keeper since 1860. The children of Barbara Hartsell, named, respectively, William, Celestia and Sarah, also lived at this home with their mother until their marriage. Anna E. Shepard's mother was the daughter of Barbara Hartsell. Joseph Walker had two children, named, respectively, Amos W., who is appellant here, and Sophronia.

Amos W. Walker left his father's home when he was about eighteen years of age to finish his education, and thereafter attended schools and colleges at Mt. Zion, Lincoln, Ann Arbor and Poughkeepsie for a period of six years, and then spent a few years teaching school, and studying law in the office of Judge Thornton, at Shelbyville. In 1880 his father purchased and presented to him a hotel in Windsor, in that county, which he conducted for about two years, when he went to Chicago and engaged in the practice of law. He was about twenty-five years of age when Anna E. Shepard was brought to

his father's house. Thereafter, up to the time he went to Chicago, he was frequently at his father's home spending his vacations there and living as one of the family. After locating in Chicago he was at his father's residence only occasionally.

Joseph Walker resided on his farm until a period about thirteen years prior to his death, when he moved to Windsor, in Shelby county, where he spent the remainder of his days.

William Hartsell, above mentioned, married said Sophronia Walker. Celestia Hartsell married one Alex Walker, who, however, was not related to Joseph Walker, and Sarah Hartsell married one John Walden. Anna E. Shepard was brought up and cared for by Joseph Walker as a member of his family. She resided in that family until his death, and he became greatly attached to her.

On December 24, 1895, Joseph Walker executed a deed conveying to Anna E. Small the real estate involved in this litigation, and also a deed conveying to Sophronia Hartsell, William Hartsell, Celestia Walker and Sarah Walden one hundred and ninety acres of land. These deeds were acknowledged by Joseph Walker at his home before one Mooberry, a notary public of said county, and the notary was requested by the grantor to hold them until he sent for them or until the grantees called for them. Subsequently Mooberry, under Joseph Walker's direction, delivered to Anna E. Small the deed to the property hereinbefore described, and delivered the deed to the one hundred and ninety acres to Sarah Walden, one of the grantees therein. Both deeds were recorded on April 3, 1896.

Joseph Walker died on April 8, 1896, at the age of eighty-three years. Prior to his death Amos W. Walker attempted to reach an understanding with the grantees in said deeds, through William Hartsell, by which the deeds should be disregarded, but he and Hartsell were unable to agree. Amos W. Walker claimed that at the

time said deeds were executed Joseph Walker was mentally incapable of making a deed, and also claimed that there had never been any legal delivery of said deeds by the grantor to the grantees. He therefore insisted that no title passed to said grantees and that said real estate descended as intestate property to himself and Sophronia Hartsell. Failing to arrive at an understanding with Hartsell, Amos W. Walker returned to Chicago, where he resided, and about two months after the death of his father wrote to Hartsell making a proposition of settlement, in which he offered to pay to Anna E. Small $300 for a quit-claim deed to the premises which Joseph Walker had deeded to her. The proposition was not accepted, and subsequently a bill was filed by Amos W. Walker and Sophronia Hartsell against Sarah Walden, Celestia Walker and William Hartsell, in the circuit court of Shelby county, to set aside the deed to the one hundred and ninety acres of land. The grounds relied upon in the bill were mental incapacity of the grantor and non-delivery of the deed to the grantees. The suit was subsequently settled and dismissed, according to the terms of a written agreement or compromise dated March 9, 1898, and the land was deeded to the complainants in that bill.

On December 1, 1897, Anna E. Small was married to Lee Shepard and moved with him to Shelbyville, Illinois. After the settlement above referred to, Amos W. Walker and William Hartsell had a conversation about a compromise between the former and Anna E. Shepard as to Amos W. Walker's claim to the real estate above described, which claim was the same as that made in the suit brought to set aside the deed to the one hundred and ninety acres. Amos W. Walker signified his willingness to pay $500 to Anna if she would execute a quit-claim deed to the property, and said that if she refused to accept that offer he would bring suit to set aside the deed to her and take the property away from her. About

two weeks after this conversation, Hartsell, who was and had been for some time confined to his home by illness, sent his brother-in-law, Alex Walker, an uncle of Anna E. Shepard by marriage, to submit the proposition of Amos W. Walker to her. He found her at her home and told her that Amos W. Walker would give her $500 if she would make a deed, and that if she did not accept that offer Amos W. Walker would try the case in court. She refused to say what she would do until she saw her husband, and she and Walker went to the place where he was at work and Walker stated the proposition to him. He also called Shepard's attention to the suit brought to set aside the deed to the one hundred and ninety acres and to the outcome of the same, and said it would probably avoid trouble if they signed the deed. Both Lee Shepard and his wife at first objected to the proposition because they did not think $500 was a sufficient consideration, but Shepard stated that he and his wife did not want to get into trouble or go into court over the property as they had no money to defend against a lawsuit, and said they would drive over to Windsor that night and sign the deed. The evidence is conflicting as to what was done that night. Lee Shepard testified that they signed a deed in which Amos W. Walker and Sophronia Hartsell were the grantees, while Mooberry, the notary, testified that they refused to sign a deed that night but said they would sign it the next night,—that they would not execute the same until they had assurance that they would receive the $500. The next night they did sign a deed conveying to Amos W. Walker the real estate here in controversy, and they afterwards received the $500 through William Hartsell. This suit was brought to set aside that deed. The land, when the Shepards executed this deed, was worth from $2800 to $3200.

The evidence tends to show that Anna E. Shepard was not of ordinary intelligence at and before the time she executed said deed.

The decree rendered by the circuit court finds that at the time of executing the deed Anna Shepard was and had been in feeble mind, incapable of transacting business and inexperienced therein, of limited education and hardly able to read and write; that Amos W. Walker was a man of education, a licensed lawyer and experienced in business matters, and knew the mental condition of Anna Shepard; that he was possessed of the trust and confidence of Anna Shepard and she trusted him in her business affairs, as Amos W. Walker knew; that the deed from Anna Shepard and husband to Amos W. Walker was obtained by fraud of the defendant and was an unconscionable bargain; orders the deed set aside and a return to the defendant of the $500 paid by him, with interest, and that he account for rents and profits. Amos W. Walker appeals from that decree.

The findings of the decree are in accord with the views of counsel for appellees. Appellant contends, however, that the transaction was not a sale but a compromise of a difficulty between the parties to the deed, growing out of the claim made by Amos W. Walker to the effect that the deed conveying the land in question to Anna E. Shepard had never been delivered by Joseph Walker, appellant's father, who was grantor therein; that, even if it had been delivered, Joseph Walker, at the time of its execution and delivery, had not sufficient mental capacity to make or deliver a deed, and further contends that Anna E. Shepard was of ordinary mental capacity, that no relation of trust and confidence existed between her and appellant, and that the execution of the deed was the result of a negotiation conducted at arm's length between the parties thereto.

ANTHONY THORNTON, (J. H. BRADLEY, of counsel,) for appellant.

CHAFEE & CHEW, and GEO. B. RHOADS, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

*First*—Two teachers who had conducted schools attended by Anna E. Shepard testified, and from their evidence it appears that she, when attending school, "was not as bright as other pupils; that she learned to read and write but was very slow in arithmetic; did not learn much geography and no grammar to amount to anything." One of these witnesses testified that she "didn't know that Anna E. Shepard ever did work a problem; that she couldn't unless she could copy it; didn't compare with the other children at all; that she couldn't pass her grades." At the time of which this teacher testified, Anna E. Shepard was seventeen years of age and the other pupils in the grade were about ten years of age. It appears from the testimony of her uncle, William Hartsell, her aunt, Sadie Walden, and from the testimony of M. Montgomery, U. S. White and George Griffin, men residing in the neighborhood who seem entirely disinterested, who had known the woman all her life and were well acquainted with her, that she was below the average, mentally; that while bright in some respects she knew nothing about business, and was not able to carry on any transaction of a business character without help; that when sent to the bank with checks by Joseph Walker she was unable to get them cashed because the bankers refused to transact any business with her. Her husband, Lee Shepard, testified that he did the buying for the family and that his wife transacted no business. Opposed to this is the testimony of Alexander Walker, who assisted in securing the execution of the deed in question, who said that she could do some ordinary business; that while she wasn't a right bright girl, she wasn't a foolish woman; and the testimony of E. M. Mooberry, who drew the deed, presented it to Mrs. Shepard and her husband for their signatures and took their acknowledgments, who had sold her school supplies when she was a child,

and who expressed the opinion that she was able to transact ordinary business. When Amos W. Walker paid the $500 upon the delivery of this deed, by an arrangement made between Amos W. Walker, Alexander Walker and William Hartsell, the money was paid to the credit of the latter at the bank, upon his agreement to give the Shepards security for it, pay them interest, and to pay the principal to them on demand at any time they bought property, but not to pay it to them unless they did buy property, for a certain number of years. William Hartsell states that this was done for the reason that Anna E. Shepard had no judgment, and he was afraid to rely upon her and give her the money. This agreement was carried out and the money paid on the purchase of real property afterwards made by the Shepards.

We are of opinion that upon the state of this record we would not be warranted in interfering with the finding of the chancellor, who saw and heard the witnesses, to the effect that this woman was of feeble mind. The arrangement made between the two Walkers and Hartsell in reference to the disposition of this $500 certainly indicates that appellant, who was among the persons who knew her best, deemed it unsafe to trust her with this money.

It is insisted by appellant that the recital in the notary's certificate that she executed the deed as her free and voluntary act is evidence of great weight on this proposition and not to be overcome by the opinions of non-expert witnesses. We are not able to concur in this conclusion. A certificate of acknowledgment is evidence only of those matters to which the officer is required to certify, and it may be shown that the grantor was mentally incapable of contracting at the time the acknowledgment was taken. (1 Cyc. 622; *Thompson* v. *N. E. M. S. Co.* 110 Ala. 400; *Williams* v. *Baker*, 71 Pa. St. 746.) The certificate of acknowledgment may perhaps be evidence that the notary considered the person whose acknowledg-

ment was taken, of sufficient mental capacity to trans-act the business in hand, but we do not deem it evidence as to whether or not in fact the person did possess such mental capacity.

*Second*—It appears that the appellant, at the time Anna E. Shepard came into his father's family as a child, was about twenty-five years of age; that he never there-after lived at his father's home continuously for any con-siderable period of time; that he was liberally educated, was admitted to the bar and for a time practiced law in the city of Chicago, and is a man of more than ordinary attainments and fine business capacity, and at the time of the trial of this case was fifty-two years of age. After Anna E. Shepard came to his father's he spent his va-cations there, living as one of the family, and at one time he was in the hotel business at Windsor a couple of years and during that time was frequently at his father's house. He was administrator of his father's estate. He and Anna E. Shepard knew each other intimately. He was fully aware that she was weak-minded. Their rela-tions seem to have been friendly, and the circumstances of the case indicate that she reposed in him the confi-dence that would naturally be expected from the fact that he was a member of the same family, apparently her friend, and was the son of the man who stood to her in the relation of father. Amos W. Walker was a party to the arrangement by which the $500 was placed where it could not be reached by her until she should buy prop-erty for which she desired to pay with this money, which indicates that he regarded himself as in some degree charged with a moral duty to assist in caring for her property. He had made an attack in the courts upon a deed which had been made to other members of her family by his father on the same date that her deed was made, and had been successful in effecting a compromise with them that had very largely deprived them of the benefit of the conveyance. This she knew.

Under these circumstances he said to William Hartsell that he was willing to give Anna E. Shepard $500 and let her quit-claim, and that if she didn't do that he would bring suit and "take everything." Hartsell told Amos W. Walker that he would report the proposition to the Shepards, and did so, and told them they could exercise their own discretion about accepting it. This proposition seems to have been conveyed to Mrs. Shepard by William Hartsell through Alexander Walker. Hartsell swears he told Alexander what Amos said, and directed Alexander to tell the Shepards. Alexander testifies that he did so, and that he told Mrs. Shepard that Amos would give her $500 for the land or he would bring suit and she could stand the consequences. Later he repeated to her and her husband the proposition, and then told them that Amos would give the $500 or they (the Shepards) would get nothing, and that they (referring to himself and to other members of Mrs. Shepard's family) "had trouble with him and got bit in it," and that it would probably avoid trouble if Mrs. Shepard would execute the deed. She was alone when Alexander Walker first made the proposition and declined to do anything about it without first consulting her husband. She and Alexander then conferred with him. The husband seems to have been an exceedingly ignorant man, and after the conference they agreed to sign the deed, and thereafter signed and acknowledged it. According to the testimony of Lee Shepard, he and his wife, at the notary's office, on the evening of the day they had the conversation with Alexander Walker, executed a deed to Amos W. Walker and his sister, Sophronia Hartsell, but on the succeeding day Mooberry came to the residence of the Shepards and told them that Amos W. Walker had made an arrangement with his sister by which he was to have this land and that another deed would be required, whereupon the Shepards executed a deed in which Amos W. Walker was sole grantee. Mooberry denies this, and says that no

deed at all was signed that night, as the Shepards would not sign without assurance of receiving their money, but that on the next day he (Mooberry) guaranteed the payment of the money and that thereupon the deed to Amos W. Walker was executed. The money was not paid then, but upon the delivery of the deed to Amos W. Walker the money was deposited in the bank to the credit of Hartsell, as herein above stated.

We are of opinion that the relations between Amos W. Walker and Anna E. Shepard, her confidence in him and in his judgment and in his ability to accomplish the things which he undertook, were such that a court of equity should carefully scrutinize any transaction between them in respect to which she seeks relief.

A fiduciary or confidential relation between the parties to a transaction exists in every case "in which there is confidence reposed on one side and the resulting superiority and influence on the other. The relation and the duties involved in it need not be legal; it may be moral, social, domestic, or merely personal." *Roby* v. *Colehour*, 135 Ill. 300; *Thomas* v. *Whitney*, 186 id. 225.

*Third*—If this transaction was a sale and Anna E. Shepard held the fee simple title to this property, then the inadequacy of the consideration shocks the conscience, as the property was worth at least $2800. Appellant contends, however, that the deed from Joseph Walker conveyed but a life estate to Anna E. Shepard, and that the grantee having died prior to the entry of a decree herein, the title reverted to the heirs of the grantor.

This deed recites that the grantor, "in consideration of $4000 in hand paid, convey and warrant to Anna Elnora Small" the real estate in question, (describing it,) and then continues: "The condition and consideration of the granting of this deed is upon the condition herein stated that the grantee is hereby prohibited from selling, mortgaging or putting any encumbrance upon the above

said described land during the lifetime of said grantee, as it is the wish and desire of the grantor that it shall be a support and maintenance for said grantee during her natural life, and that upon the sale of said lands, or attempt to sell the same, it shall be forfeited and revert back and become a part of my estate."

The words of grant, "convey and warrant," convey the fee unless they are limited to a lesser estate by words found in the granting clause or in the *habendum* of the deed, if it contain an *habendum*. They may be used, however, in conveying a life estate or an estate for years, and words limiting the estate conveyed to an estate of the character of either of the two last mentioned are not inconsistent with such words of grant; and where there is language, either in the granting clause or in the *habendum* of the deed, limiting the estate conveyed by such granting words to one less in extent than a fee, such words of limitation will be given effect. Of this class are the cases of *Riggin* v. *Love*, 72 Ill. 553, and *Welch* v. *Welch*, 183 id. 237, which are the principal cases relied upon by appellant. There is no such *habendum* in the deed before us. The most that can be said of the language here is, that it indicates the intention of the grantor to have been that the grantee should not dispose of the property during her life, his purpose being to prevent the alienation thereof, and to provide for her support so long as she should live.

Words contained in a deed which are merely expressive of the purpose animating the grantor in making it do not limit the estate conveyed. *Bryan* v. *Howland*, 98 Ill. 625; *Randall* v. *Randall*, 135 id. 398.

Each of the cases just cited arose upon a devise, where much greater latitude of construction is allowable than is allowable in the construction of a deed. *Lehndorf* v. *Cope*, 122 Ill. 317.

It is true the deed is upon a condition subsequent prohibiting the grantee from selling or encumbering the

property; but that condition is one against all aliena-
tion during the lifetime of the grantee, and is void be-
cause it is repugnant to the fee simple estate conveyed.
(*Wilson* v. *Turner,* 164 Ill. 398; *Jones* v. *Port Huron Engine
Co.* 171 id. 502; *Muhlke* v. *Tiedemann,* 177 id. 606.)    The
title conveyed by this deed was a fee simple absolute.

It is urged, however, that this transaction was a set-
tlement and compromise of a difficulty between the par-
ties, growing out of the claim that the deed which we
have just been discussing had never been delivered, and
that at the time of its execution the grantor, Joseph
Walker, lacked mental capacity necessary to a valid
conveyance, and that the doctrine of inadequacy of con-
sideration in the sale has no application where the
transfer of the property was made in compromise of
a claim asserted against the grantor.    Where a claim
is asserted by one party against another, if the party
making the claim honestly supposes that he has a good
cause of action, compromise and satisfaction of the right
asserted is a sufficient consideration to uphold a contract
fairly entered into, even if, in fact, his claim could not
have been enforced, either in whole or in part, at law or
in equity.    "The compromise of a doubtful right, where
there is neither actual nor constructive fraud and the
parties act in good faith, is sufficient consideration to
support a promise." (*McKinley* v. *Watkins,* 13 Ill. 140; *Hon-
eyman* v. *Jarvis,* 79 id. 318; *Adams* v. *Crown Coal and Tow
Co.* 198 id. 445.)    Where a compromise has been entered
into in good faith, a court will refuse to regard the mer-
its of the controversy upon which the compromise was
effected as being open for litigation between the par-
ties.    (*Adams* v. *Crown Coal and Tow Co. supra.*)    Where
the compromise agreement is attacked, however, and it
appears that the claim which has been settled was not
made in good faith, but was asserted as a mere pretense
to extort money or induce the conveyance of property,
the transaction will not be upheld.  (8 Cyc. 509; 6 Am. &

Eng. Ency. of Law,—2d ed.—714; *Knotts* v. *Preble,* 50 Ill. 226; *Adams* v. *Crown Coal and Tow Co. supra.*) There is no evidence in this record from which it appears that the appellant, an attorney, in good faith believed that this deed to Anna E. Shepard was null and void. The evidence in relation to that deed shows that Joseph Walker, when he executed it, was strong in mind, and its delivery is clearly proven. Nothing appears from which Amos W. Walker could in good faith have had any other information or belief. Moreover, if he had been taking this deed and paying $500 as a compromise, the deed should have been taken to himself and his sister, who were the sole heirs of his father and each the owner of an undivided one-half of the property if the deed from Joseph Walker was not valid. Instead of that he took it to himself, without any pre-arrangement with his sister. It also appears that some time after the execution of this deed Sophronia Hartsell brought a suit against Amos W. Walker seeking a partition of the lands of their father, in which she charged that she had been defrauded by defendant. In that suit Amos testified as follows in reference to the real estate in controversy in the case at bar: "I told my sister that the estate had no interest in it whatever, and that the conveyance to this little girl was an absolute fee simple, and I had paid a lawyer in Chicago, named Judge Bradley, $50 to brief it, and he reported it absolute. * * * I told my sister that the land that this Small girl got by deed from my father gave her an absolute fee simple title in the eighty acres. I really had no interest in it whatever. It belonged to this Small girl, and I afterward bought her interest for $500." We think it apparent that Amos W. Walker asserted a right to this real estate as a mere pretense, for the purpose of inducing the weak-minded woman who owned it to part with her property, and that the execution of the deed cannot be held as having been made in compromise of a doubtful right.

210—8

Inadequacy of consideration is not alone a sufficient ground for setting aside a conveyance of real estate, but where, as here, the inadequacy is gross, the grantor of feeble mind, and the relations between grantor and grantee of such a character that the threat made by him to deprive her of her land if she did not accept the sum offered by him would have undue weight, then proof of gross inadequacy of the consideration becomes evidence of fraud which is of controlling importance and justifies the interference of a court of equity. *Reed* v. *Peterson,* 91 Ill. 288; *Witherwax* v. *Riddle,* 121 id. 140; *Davis, Cory & Co.* v. *Chicago Dock Co.* 129 id. 180; *Hardy* v. *Dyas,* 203 id. 211.

*Fourth*—It is urged that Anna E. Shepard was guilty of such *laches* in bringing this suit that the deed should not now be set aside. Waiving any other discussion of this question, it appears that the testimony of Amos W. Walker above quoted was given on December 20, 1900, and that Anna E. Shepard then learned for the first time of the fraud that had been practiced upon her, and that the claim set up by Amos W. Walker had been a pretense, and the conveyance taken, not for the heirs of Joseph Walker, but for Amos W. Walker alone, and she instituted this suit on January 21, 1901. The doctrine of *laches* has no application.

*Fifth*—It is then objected that the proof and the allegations of the bill do not correspond. The bill purports to set out the exact language used by Alexander Walker when he delivered to Anna E. Shepard the proposition of Amos W. Walker, and while the testimony does not establish the precise words used in that message as stated in the bill, still the gist of the proposition as so charged was, that if she did not accept the $500 and make the deed she would get nothing and the land would be taken from her. The evidence is the same in substance.

The decree of the court below does justice between the parties, and will be affirmed.     *Decree affirmed.*