### The American Trust & Savings Bank, Trustee in Bankruptcy, Appellant, v. The Lantry Contracting Company, Appellee.

### Gen. No. 16,333.

1. COMPROMISE—*effect.* Where a compromise agreement concerning disputed matters pending litigation is entered into in good faith, neither party can go back of the agreement and inquire into the merits of the original controversy.

2. COMPROMISE—*validity.* In an action on a bill of exchange given pursuant to a compromise agreement concerning the amount due, the fact that prior to the compromise an agent of one of the parties had directed an agent of the other to apply part of a certain draft to the credit of an account covered by the agreement is not conclusive as to the invalidity of the agreement.

3. CORPORATIONS—*notice of order by agent.* A company is chargeable with notice of an order given by an officer and agent thereof to another company.

4. COMPROMISE—*when valid.* A bill of exchange given pursuant to a compromise as to money due is valid if the compromise was entered into without actual or constructive fraud though the claim could not have been enforced.

5. COMPROMISE—*fraud.* No fraud invalidating a compromise of a disputed amount due on account can be predicated upon the contention by one party that it had not been directed to apply a certain payment to the account where the other party at the time of

the settlement knew of such contention and knew that the application had not been made.

Appeal from the Municipal Court of Chicago; the Hon. CHARLES N. GOODNOW, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1912. Reversed with finding of fact. Opinion filed May 15, 1912.

FRANK T. MURRAY and WILLIAM A. BITHER, for appellant.

HELMER, MOULTON, WHITMAN & WHITMAN, for appellee.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

This is a suit in attachment, wherein the Atchison, Topeka & Santa Fe Railway Company was summoned as garnishee, instituted in the Municipal Court by the American Trust and Savings Bank, trustee in bankruptcy for the Contractors Supply & Equipment Company, against The Lantry Contracting Company, to recover the amount of a bill of exchange, as follows:

"THE LANTRY CONTRACTING CO.,
PAOLA, KANSAS, Aug. 29, 1908.
C. A. MORSE, CHIEF ENGINEER,
Topeka, Kansas.
Dear Sir:
Please pay to The Contractors Supply & Equipment Company, Thirty-Eight Hundred Seventeen 69/100 Dollars, same being in full of all claims against The Lantry Contracting Company, and charge to our account.
It is understood that the garnishment suit brought by said Contractors Supply & Equipment Company is to be dismissed at Cost of said Company.
THE LANTRY CONTRACTING COMPANY,
By T. T. Kelly,
Secretary and Treasurer."

Upon a trial by jury there was a verdict for defendant and judgment against the plaintiff for costs, to reverse which judgment it prosecutes this appeal.

The declaration consists of the common counts and a special count on the instrument sued on. Appellee pleaded the general issue, and special pleas of set-off, and that the debt evidenced by the bill of exchange had been paid before the same was given, and that The Contractors Supply & Equipment Company had then fraudulently concealed from appellee the fact of such payment.

In 1907 and thereafter the Contractors Supply & Equipment Company (hereinafter called the Supply Company) was engaged in the manufacture and sale of supplies and machinery for use by general contractors. During the same time appellee, The Lantry Contracting Company, a corporation (hereinafter called the Contracting Company) was engaged in doing certain work for the Atchison, Topeka & Santa Fe Railway Company at Lynn, New Mexico, and The Lantry Construction Company, a corporation (hereinafter called the Construction Company) was engaged in doing certain work at Duluth, Minnesota. Charles J. Lantry, who was president and general manager of both of said corporations, was, during the same time, personally engaged in performing a contract at Pembroke, Virginia, for the Tidewater Construction Company. At the place last named Lantry was doing business as the Lantry Ballast Company (hereinafter called the Ballast Company). From time to time the Contracting Company, the Construction Company and the Ballast Company placed orders with the Supply Company for supplies and machinery to be shipped to the several points where work was being done, and all such shipments were charged on the books of the Supply Company to the Contracting Company, and memoranda made as to the place of shipment of each item charged. The amount charged for supplies and ma-

chinery shipped to the Construction Company at Duluth was paid to the Supply Company by said Construction Company, and is not here involved. On September 21, 1907, orders for supplies and machinery had been placed by Lantry with the Supply Company for shipment to the Ballast Company at Pembroke, Virginia, amounting to over $9,000, but only shipments to the amount of $649.50 had then been made, and all the shipments thereafter were made upon a credit of thirty days. There was also then due to the Supply Company approximately $4,399.60, for supplies and machinery theretofore shipped to Lynn, New Mexico. On that day the Supply Company, at the direction of Lantry, made its draft on the Tidewater Construction Company for $9,300, and credited said amount generally to the account of the Contracting Company, which account then showed a credit balance in favor of the Contracting Company of $2,725. Shortly thereafter, the Supply Company, without apparent authority so to do, turned over $627 of the amount standing to the credit of the Contracting Company to the Interstate Equipment & Engineering Company, a corporation controlled by the officers and stockholders of the Supply Company, in payment for some supplies shipped by said Interstate Equipment Company to the Ballast Company. On October 8, 1907, after the payment of $9,300 by the Tidewater Construction Company to the Supply Company, the Contracting Company sent to Lantry a draft for $4,399.60 in payment of the balance then due from the Contracting Company to the Supply Company, the proceeds of said draft being retained by Lantry. The controversy here involved relates solely to this item of $4,399.60.

On February 1, 1908, the Supply Company sent to the Contracting Company a statement of account, wherein it was made to appear that the Contracting Company was indebted to the Supply Company in the sum of $10,407.78, which amount included said item of

630    APPELLATE COURTS OF ILLINOIS.

American Trust & Savings Bk. v. Lantry Con. Co., 171 Ill. App. 626.

$4,399.60; also items aggregating about $2,000 for supplies and machinery shipped to the Construction Company at Duluth, Minn., and also items aggregating about $4,000 for supplies and machinery shipped to the Ballast Company at Pembroke, Va. At that time Lantry was financially embarrassed. His official relations with the Contracting Company and the Construction Company had ceased, and he was ill in a sanitarium and unable to transact business. After the receipt of the above statement by the Contracting Company, and in response to repeated demands by the Supply Company for a settlement, John A. Maley, acting for the Contracting Company, had several interviews with George C. Marsh, the general manager of the Supply Company, wherein Maley claimed that the Contracting Company had paid the sum of $4,399.60 to the Supply Company through Lantry, and that Lantry had informed the officers of the Contracting Company that he had paid said amount to the Supply Company on September 21, 1907. Marsh denied that such payment was made by Lantry, and as the draft for that amount did not come into the possession of the Supply Company, it was assumed that Lantry had wrongfully converted the amount to his own use. Suit in attachment had been instituted by the Supply Company against the Contracting Company, and the Atchison, Topeka & Santa Fe Railway Company had been summoned as garnishee and answered that it was indebted to the Contracting Company in a sum exceeding $6,000. This suit was dismissed May 18, 1909, prior to the commencement of the present suit.

On August 28, 1908, while negotiations for a settlement of the claim of the Supply Company against the Contracting Company were pending between Marsh and Maley, Marsh severed his connection with the Supply Company, and on the following day negotiations for a settlement of the claim were resumed by Maley with George D. Smith, who succeeded Marsh.

On behalf of the Contracting Company, Maley claimed certain charges were improperly made, and that the Contracting Company was entitled to certain deductions. After concessions made by each, Maley and Smith, without reference to said item of $4,399.60, it was finally agreed that there was due from the Contracting Company to the Supply Company the sum of $3,817.69. Immediately thereafter, on the same day, Maley wired T. T. Kelly, the secretary and treasurer of the Contracting Company, to mail to the Supply Company an order upon the chief engineer of the Atchison, Topeka & Santa Fe Railway Company for said sum of $3,817.69, and in response to such wire Kelly made out and mailed the said order to the Supply Company. On September 1st, following, Maley located Lantry, and upon being informed by the latter that he had paid the Supply Company $4,399.60 on September 21, 1907, Maley wired Kelly to stop payment on the order. Payment on the order was stopped by Kelly and this suit upon the order followed.

Lantry testified that all of his business transactions with the appellant, Supply Company, were conducted through Marsh, the general manager of said company. He further testified that on September 21, 1907, when he instructed Marsh to draw upon the Tidewater Construction Company for $9,300, he directed Marsh to place $4,399.60 of the amount realized upon said draft to the credit of the account of the Contracting Company, in payment of the amount due for the previous month; that immediately thereafter he notified the Contracting Company he had paid said amount to the Supply Company, and the Contracting Company reimbursed him for such payment.

Marsh, called as a witness for appellant, testified that he did not remember any specific conversation in which Lantry told him to credit said amount upon the account of the Contracting Company, and that he did not remember having instructed any one to have it

done. On cross examination he testified that he could not state from present recollection that Lantry did not tell him to place the $4,399.60 on the account of the Contracting Company; that Lantry probably said to credit it to the accounts.

If the controlling question in the case was whether or not Lantry in fact directed Marsh to apply $4,399.60 of the draft for $9,300 to the credit of the appellee, Contracting Company, the verdict of the jury might well be held to be conclusive against appellant, but that question is not controlling.

It is conceded that the bill of exchange or order sued on was given in pursuance of the compromise agreement with reference to disputed matters pending litigation between the parties, and it is well settled that where such compromise agreement has been entered into in good faith, it is not permissible for either party to go back of such agreement and inquire into the merits of the original controversy. Dyrenforth v. Palmer Tire Co., 240 Ill. 25; Bingham v. Browning, 197 Ill. 122.

Appellee insists that it was induced to make said bill of exchange by the fraud perpetrated upon it by appellant, and that as the debt which said bill of exchange was given to liquidate had in fact been paid to appellant, the bill of exchange was without consideration. While the item of $4,399.60 was the main subject of controversy between the parties, it was not the only matter in dispute that was covered by the compromise agreement. We shall not, however, discuss this latter phase of the controversy, but will only consider the questions of fraud and want of consideration.

On September 21, 1907, when Lantry claims to have directed appellant to credit the account of appellee with $4,399.60, he was the president and general manager of appellee, and as appellee could only act through its officers and agents, it was then chargeable with actual knowledge that such direction had been

given. The written statements sent by appellant to appellee February 1, 1908, and May 1, 1908, show that said amount had not in fact been credited to the separate account of appellee for supplies and machinery shipped to it, but had been credited to the general account of all shipments kept in the name of appellee. A controversy then immediately arose as to said item of $4,399.60, and such controversy continued until, and was directly involved in, the compromise agreement of August 29, 1908, when the bill of exchange was given. The only ground for imputing any fraud to appellant is that it persistently insisted that it had not been directed by Lantry to credit appellee's separate account with $4,399.60. The separate account of appellee had not been so credited, and it had long since been so advised. Appellee did not claim that the draft for $4,399.60, sent by it to Lantry, had been turned over to appellant.

It is manifest from this record that the persistent insistence on the part of appellant that it had not been directed by Lantry to credit appellee's separate account with $4,399.60 was made in entire good faith. The controversy related to a pure question of fact asserted by appellee and denied by appellant with equal good faith.

There is no pretense that appellant was responsible for the inability of appellee to communicate with Lantry with reference to the matter in controversy, and the evidence discloses that when Maley saw Lantry on September 1, 1908, the latter merely reiterated his statement made to appellee on September 21, 1907, that he had paid the amount in controversy by directing Marsh to apply so much of the draft for $9,300 to the credit of appellee's separate account. At the time the compromise agreement was entered into the parties stood upon equal ground. There was no known concealment by appellant of any material fact within its knowledge.

In Walker v. Shepard, 210 Ill. 100, it is said:

"Where a claim is asserted by one party against another, if the party making the claim honestly supposes that he has a good cause of action, compromise and satisfaction of the right asserted is a sufficient consideration to uphold a contract fairly entered into, even if, in fact, his claim could not have been enforced, either in whole or in part, at law or in equity. 'The compromise of a doubtful right, where there is neither actual nor constructive fraud and the parties act in good faith, is a sufficient consideration to support a promise.' McKinley v. Watkins, 13 Ill. 140; Honeyman v. Jarvis, 79 Ill. 318; Adams v. Crown Coal & Tow Co., 198 Ill. 445. Where a compromise has been entered into in good faith, a court will refuse to regard the merits of the controversy upon which the compromise was effected, as being open for litigation between the parties. Adams v. Crown Coal & Tow Co., *supra*. Where the compromise agreement is attacked, however, and it appears that the claim which has been settled was not made in good faith, but was asserted as a mere pretense to extort money or induce the conveyance of property, the transaction will not be upheld. 8 Cyc. 509; 6 Am. & Eng. Encyc. of Law (2nd Ed.) 714; Knotts v. Preble, 50 Ill. 226; Adams v. Crown Coal & Tow Co., *supra*."

The doctrine announced in the Walker case is peculiarly applicable to the facts disclosed by this record and is conclusive of the right of appellant to recover upon the instrument sued on.

Appellant's motion at the close of all the evidence to instruct the jury to find the issues for it and to assess its damages at the amount due upon the bill of exchange should have been allowed and the peremptory instruction tendered with such motion should have been given.

The judgment of the Municipal Court will be reversed with a finding of facts to be incorporated in the judgment of this court, and final judgment will be entered in this court in favor of appellant and against

appellee for $4,517.53, together with costs, and also judgment for the like amount, together with said costs, in favor of appellee for the use of appellant against the Atchison, Topeka & Santa Fe Railway Company, garnishee; and as to the residue of the sum of $6,000 due from said garnishee to appellee that appellee have judgment against said garnishee therefor.

*Judgment reversed with finding of facts and final judgment in this court.*

FINDING OF FACTS: We find as ultimate facts that appellee is indebted to appellant in the sum of $4,517.53 for principal and interest upon the bill of exchange sued on; that the Atchison, Topeka & Santa Fe Railway Company, as garnishee herein, is indebted to appellee in the sum of $6,000; that appellant was not guilty of any fraud whereby appellee was induced to enter into the compromise agreement wherein the bill of exchange sued on was given by appellee, and that said compromise agreement constitutes a good and sufficient consideration for said bill of exchange.