(No. 17020.—Decree affirmed.)
JOSEPH SCHWEITZER *et al.* Appellants, *vs.* FRED M. GIBSON,
Appellee.

*Opinion filed April 23, 1926—Rehearing denied June 3, 1926.*

1. DEEDS—*when deed given in exchange for bank stock will not be set aside for fraud.* A deed given in exchange for bank stock, which proved to be worthless and subject to a liability on account of the insolvency and closing of the bank, will not be set aside on the ground of alleged fraudulent misrepresentations as to the value of the stock, where the complainant's own testimony, which coincides with that of witnesses for the defendant, shows that he made inquiry as to the value of the stock and relied upon the statements of disinterested parties, and where there is no showing that the defendant was any more aware of the bank's condition than was the complainant.

2. SAME—*when deed will not be set aside for inadequate consideration.* Mere inadequacy of price is not, *per se,* ground for setting aside a transfer of property, and the rule that the inadequacy may be so gross and palpable as of itself to amount to proof of fraud will not be applied where the parties dealt at arm's length, and where the complainant, who traded property in exchange for bank stock which proved to be worthless, was a man of considerable business experience and there is no showing that he was the victim of any overreaching or misrepresentation.

APPEAL from the Circuit Court of Warren county; the Hon. WILLIS F. GRAHAM, Judge, presiding.

HARTZELL, CAVANAGH, MARTIN & HARTZELL, for appellants.

L. H. HANNA, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellants filed their bill in the circuit court of Warren county seeking to set aside a deed executed by them and delivered to appellee in exchange for certain bank stock. The bill charged that appellants, as husband and wife, were owners of a certain 80-acre tract of land in Henderson

county, Illinois, and that on May 21, 1923, they were in-
duced to trade the same to appellee for thirty-five shares of
bank stock of the State Bank of Kirkwood; that in order
to secure such trade appellee's agent, Joe Campbell, falsely
stated that the Kirkwood Bank was in good condition; that
the stock was worth $300 per share, and that a short time
before appellee had sold some of his stock for $300 per
share; that appellants relied upon these statements, which
were not true; that the facts concerning said bank are, that
on June 16, 1923, it closed its doors and ceased doing bank-
ing business, and was at the time of the trade insolvent and
had been for more than six months prior thereto. The bill
also avers that the business of this bank is being wound
up by the First National Bank of Kirkwood and the stock-
holders have been assessed the full amount under the law
to make up the deficiency in assets. The relief prayed is
that the deed be declared null and void as having been ob-
tained by fraudulent representations and for no considera-
tion whatever and that appellee may be required to re-convey
the premises. On issues being made up the cause was re-
ferred to the master, who took testimony and reported that
the proof in the case did not sustain the averments of the
bill and recommended the same be dismissed at complain-
ants' costs. The chancellor overruled exceptions to the mas-
ter's report and decreed in accordance with his findings.
Appellants bring the cause here, contending that the court
erred in finding that there was no fraud on the part of ap-
pellee and urging that inadequacy of consideration is so
palpable as to amount to proof of fraud.

Appellants' evidence tended to show that some time prior
to May 21, 1923, appellee requested Joe Campbell to trade
or sell for him certain bank stock which he claimed to own
in the State Bank of Kirkwood; that about three or four
weeks prior to the 31st day of May, Campbell came to
Schweitzer and informed him that appellee desired to trade
the bank stock for Schweitzer's land, stating that appellee

321–22

wanted $10,500 for thirty-five shares of the bank stock and would allow appellants $8000 for the farm. Schweitzer testified that Campbell then told him that the stock was all right; that the bank was then in good condition; that the stock was worth $300 per share, and that a short time before Gibson had sold some of his stock in the bank for $300 per share. Campbell, who was called as a witness for appellants, denied this conversation, and, on the contrary, testified that he told Schweitzer to look up the value of the bank stock. Campbell also testified that he told Schweitzer that about a year before Gibson had sold some stock for $300 per share. It appears from the evidence of one Isaacson that about a year and a half before this trade he purchased five shares of this bank stock from Gibson for $300 per share. Schweitzer testified that he had several conversations with Campbell regarding the trade of the farm for the stock, which resulted later in an even trade of thirty-five shares of the bank stock for the 80 acres of land. Schweitzer testified that Campbell told him the bank was in better shape than it had been and that Gibson would guarantee the stock would pay a dividend that year; that the bad paper of the bank had been charged off. This was denied by Campbell. Campbell testified, and it is admitted by Schweitzer in his testimony, that he advised that Schweitzer make an investigation as to the value of the bank stock, and Schweitzer testified that he did make such investigation; that he consulted Walter H. Gridley three times before the deal was closed, and also consulted J. W. Houston, who had been cashier of the bank a short time previous thereto. He also consulted J. W. Cochran, who was assistant cashier of the bank, and Ray Tubbs, cashier of the First National Bank of Kirkwood. Gridley testified as Schweitzer's witness that in the first conversation he had with Schweitzer he told him that it was rumored that the bank was in bad condition, and that Schweitzer said he was going to find out. Schweitzer denies that Gridley so told

him. It is evident, however, that he did consult these men, who the evidence shows were in nowise connected with appellee or in any way interested in the trade. Schweitzer testified that he had confidence in the men he consulted about the matter and relied on their judgment. He testified that Gridley told him that so far as he knew the bank was all right and that the trade would be all right; that Cochran and Houston both told him they thought it would be a good trade. Cochran, the assistant cashier of the bank, advised Schweitzer that he thought the book value of the stock was from $150 to $180.

It appears that at the time of the transfer Gibson did not have thirty-five shares of stock but turned over thirty shares at the time of the delivery of the deed and agreed to produce five other shares later; that later the other shares were settled for at $170 per share by $850 in cash which appellee paid to appellant. There is no showing in this record that appellee knew the condition of the bank at the time the trade was made. The only circumstance from which a suspicion that he knew of its condition might arise is the fact that his mother was a director of the bank. But the evidence shows she had not attended a meeting of the bank directors for a year and a half and at the last meeting attended by her had declared she would not serve longer in that capacity. There is no showing that she knew of the condition of the bank. Gridley, Houston and Cochran are not shown to have any interest whatever in the transaction.

Schweitzer has not shown by a preponderance of the evidence that fraudulent statements were made to him. He testifies to statements made by Campbell concerning the value of the stock and payment of dividends. This is denied by Campbell, who was put on the stand as Schweitzer's witness. There is no circumstance in the record corroborating Schweitzer in the matter. It is too well settled to require citation of authorities that fraud must be established by convincing proof. Moreover, it does not appear Schweit-

zer relied on such statements, if they were made. He admits that Campbell told him to make an investigation of the value of the bank stock. He also testified that he called upon various citizens, hereinbefore referred to, for their advice and relied upon it. The proof does not sustain the charge of fraudulent misrepresentation of the value of the bank stock on the part of appellee.

Appellants urge that the inadequacy of price is so gross and palpable as of itself to amount to fraud. The rule is that mere inadequacy of price is not, *per se,* ground to set aside the transfer of property but it may be so gross and palpable as of itself to amount to proof of fraud. That rule has only been applied, however, in cases where some advantage is taken over the person defrauded, as in *Walker* v. *Shepard,* 210 Ill. 100, where the proof showed a feeble mind on the part of the grantor and an undue advantage taken by the grantee. In *Hardy* v. *Dyas,* 203 Ill. 211, the grantor was shown to be of unsound mind and the grantee obtained an advantage over the infirmities of the grantor. In *Witherwax* v. *Riddle,* 121 Ill. 140, it was said that while inadequacy of price is not, *per se,* a ground for setting aside transfer of property, yet where the inadequacy is gross and palpable it may of itself amount to proof of fraud, and such proof, taken in connection with imposition or misrepresentation on the part of the purchaser or his agents, is sufficient to cause the deed to be set aside. In *Fecht* v. *Freeman,* 251 Ill. 84, inadequacy of consideration was considered ground of fraud in a transaction whereby an insane person exchanged a farm worth $12,500 for $1250 in cash and some worthless property.

So far as is shown by the record the bank stock is worthless and may amount to a liability, and were it shown in this case that appellants were the victims of any overreaching or misrepresentation whatever we would not hesitate to set aside the transfer, but so far as shown by the record

Schweitzer is a man of considerable business experience. The record shows he had been a dealer in livestock and that he had bought and sold farms. We cannot set aside this trade on the ground that there is a suspicion that appellee knew of the condition of the bank. There must be proof of such ground. Moreover, if one of appellants' own witnesses is to be believed, Schweitzer also had notice of a rumor that the bank was in bad condition. We would not be justified in setting aside the decree in this case.

The decree will be affirmed.                *Decree affirmed.*