### JUDGE TROGDON
### *v.*
### A. Y. TROGDON *et al.*

*Filed at Springfield November 23, 1896.*

MORTGAGES—*conveyance absolute upon its face is subject to parol explanation.* A certificate of sale, and the sheriff's deed based thereon, for certain land, are not conclusive of their true character, and it is competent to show by parol that they were, by agreement between the owner and the purchaser, intended as a mortgage.

APPEAL from the Circuit Court of Edgar county; the Hon. FERDINAND BOOKWALTER, Judge, presiding.

DUNDAS & O'HAIR, for appellant.

JAMES A. EADS, H. VAN SELLAR, H. S. TANNER, and A. Y. TROGDON, for appellees.

Mr. JUSTICE BAKER delivered the opinion of the court:

This cause was heard in the circuit court of Edgar county, before the chancellor, upon the amended bill of Judge Trogdon, the appellant here, the amended cross-bill of A. Y. Trogdon, one of the appellees, the answers to said amended bill and amended cross-bill and the replications thereto.

The amended bill was for partition of a certain tract of land of about one hundred and sixty acres, formerly owned by one Samuel Trogdon, deceased, the grandfather

of the complainant.   It made A. Y. Trogdon and the other heirs parties defendant, set forth the interest of each of the heirs in the land, and averred, among other things, that all of the interest of A. Y. Trogdon in said land, excepting $\frac{3}{10}$ thereof, became vested in the complainant in the following manner, to-wit:   That the sheriff of Edgar county, by virtue of an execution issued from the Edgar circuit court, in favor of one William C. Townsend against A. Y. Trogdon, sold, on the 30th day of August, 1890, all of the interest of said A. Y. Trogdon in said land to the plaintiff in the execution, William C. Townsend; that said Townsend afterwards, on November 27, 1891, assigned the certificate of sale to the complainant in the bill, and that later, on the 13th day of December, 1892, the said sheriff executed and delivered to the complainant a sheriff's deed, conveying to him all the interest that the said A. Y. Trogdon had at that time in said land.   It further averred that said $\frac{3}{10}$ of the land became vested in A. Y. Trogdon subsequently to the making of the sheriff's deed.

A. Y. Trogdon, both by answer and amended cross-bill, denied that the complainant became the absolute purchaser of his interest in the land by virtue of said certificate and sheriff's deed, and alleged that both of those instruments were merely held by the complainant in trust for him, to secure the payment to complainant of a certain sum of money due and owing to him by the said A. Y. Trogdon.

The report of the master in chancery, to whom the cause was referred for proofs, found the issue to be with A. Y. Trogdon, and that the complainant merely held the title to A. Y. Trogdon's interest in the premises in trust to secure the payment to him, the complainant, of the sum of $250, with interest thereon at the rate of seven per cent per annum from November 27, 1891.   The court sustained the findings of the master, and decreed that A. Y. Trogdon was the owner of the portion of the land in dispute, subject to complainant's lien for the sum of

$250 and interest, as aforesaid. It is to this portion of the decree, only, that the appellant objects, the decree having settled satisfactorily to all of the parties in interest all of the other matters in controversy in the cause. He claims that the court erred in finding as it did on this question, instead of decreeing that he was the absolute owner of the disputed interest in the land.

On November 27, 1891, and after appellee's right of redemption had expired, William C. Townsend, the purchaser at the execution sale, assigned the sheriff's certificate of sale to the appellant herein, who, on the same day, signed and delivered to appellee the following written agreement:

"For and in consideration, I hereby agree to cancel and deliver up to A. Y. Trogdon a certificate of sale made to W. C. Townsend on judgment of Townsend against A. Y. Trogdon, sale made about August 30, 1890, for $520.49. Whereas, Judge Trogdon has bought said certificate for $250 on November 27, 1891, now the said Judge Trogdon holds said certificate until said money is to be paid to him, with seven per cent interest, said money to be paid on or before June 27, 1892, or this will be void.
JUDGE TROGDON."

At this time a judgment was outstanding against appellee and the appellant, the latter being security, and it appears appellant was anxious that appellee should get back his interest in the land, which was worth far more than it had sold for at the execution sale. It would be more than sufficient to pay off this judgment, and would thus relieve him. In fact, he had frequently spoken to appellee on the subject and urged him to buy the certificate. The evidence shows that on said 27th day of November, 1891, appellant met appellee and asked him if he would purchase the certificate of sale held by Townsend, and appellee replied that he could not, because he had no money. Thereupon appellant said that he would buy it, to which appellee assented. They then went together to the office of one J. E. Dyas, who held the certificate as attorney for Townsend, and told him their

errand. Appellant offered $250 for the certificate, but Dyas refused to sell it for less than $300. Appellant refused to pay that amount. At this juncture appellee called Dyas into another room, where the latter consented to take the former's note for $50 in payment of so much of the price demanded. The note was then and there made and handed by appellee to Dyas. They then returned to the other room where they had left appellant, and Dyas told him he would take his $250 and assign to him the certificate, provided appellee would release him, Dyas, and his client, Townsend, from any liability for damages growing out of the sale of the land, which, it seems, had been sold for more than was due on the judgment. The transfer of the certificate was agreed to on this basis. Appellee thereupon signed the release, and Dyas assigned the certificate to appellant, who paid him the $250. About the same time the agreement signed by appellant and above set forth was given by him to appellee. As to these facts there is no dispute. Whether or not appellant then knew that appellee had given Dyas a note for $50 does not clearly appear, the testimony on this point being conflicting. Light on this question, however, is not necessary to a decision of the case.

Appellee testified that the understanding between him and appellant, at the time of the purchase of Townsend's certificate, was, that appellant was assisting him to get back his property; that the $250 advanced by appellant and paid to Dyas was a loan to him, appellee, and that the certificate was assigned to appellant in order that he might have a lien for the repayment to him by appellee of the said $250 and interest thereon. Appellant, on the other hand, testified that there was no such understanding, but that his purchase of the certificate was purely on his own account, and free from any interest of appellee therein. The testimony of appellee is corroborated by the facts that he paid $50 of the money given to Dyas and signed the release. He would not have done these

things had he not understood that he was to be materially benefited thereby. The further facts that appellant was interested in appellee's regaining his title to the land, that he took the latter with him to Dyas' office, where appellee assisted him in making the bargain for the purchase of the certificate of sale, and that he signed and gave to appellee the agreement before mentioned, all tend strongly to sustain the position of appellee that this transaction was but a mortgage. Appellant obtained his sheriff's deed without the knowledge of appellee, who did not become aware of the fact until a long time thereafter.

It is contended by appellant that the only understanding between them was that he was to extend the time of redemption, and that this was evidenced by the agreement of November 27, 1891, which he signed and gave to appellee, and which the latter accepted. That writing, if read alone and without regard to the other evidence in the case, would seem to bear out this contention. However, when taken in connection with the facts and circumstances in evidence, its true meaning is plain,—that is, it but sustains the position of appellee that the certificate was held by appellant merely as a mortgage to secure the payment of the $250. The date named, in the writing for the payment of the amount due simply fixed the time when appellant might foreclose his lien.

The fact that the assignment of the certificate of sale and the sheriff's deed purport to convey absolutely to appellant the appellee's interest in the land here in question is not conclusive of their true character, for it is competent to show by parol evidence that they were in fact intended as a mortgage. *Whittemore* v. *Fisher*, 132 Ill. 243.

Our conclusion is that the decree below was right, and it is accordingly affirmed.        *Decree affirmed.*