WESTERN UNDERWRITING & MORTGAGE CO. v. VALLEY BANK OF PHŒNIX et al.

(Circuit Court of Appeals, Ninth Circuit. November 13, 1916.)

No. 2675.

1. PLEDGES ⊙⟶16(2)—PAROL EVIDENCE—ADMISSIBILITY.

Where the property and securities of a defendant bank were transferred to another bank under a written instrument providing that the transferee should discharge the debts and obligations of defendant, evidence of a parol agreement, whereby defendant agreed to indemnify the transferee should the assets be insufficient to discharge all debts and liabilities, is admissible to show that the instrument was not a sale but a pledge; equity looking to the substance and not the form.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. § 25; Dec. Dig. ⊙⟶16(2); Evidence, Cent. Dig. § 2136.]

2. SALES ⊙⟶6—INSTRUMENT—CONSTRUCTION.

By written agreement, defendant bank transferred its assets to another bank, which agreed to discharge the debts and liabilities of defendant bank. Individuals named as parties of the second part, who signed the contract guaranteed at the end of three years, should the assets be in-

sufficient to discharge all debts and liabilities, to indemnify the transferee; it being further agreed that, should the guarantors pay any such deficiency, the transferee would deliver to them all assets not reduced to cash. About a year later, the defendant bank executed a note for a large sum and delivered it to the transferee bank as evidence of the indebtedness then existing, and subsequently, the indebtedness having been reduced, a note for a lesser amount was given. *Held*, that the contract was not one of sale, but was a conveyance to enable the transferee to pass title to the assets of the defendant bank and dispose of them for the payment of debts, and therefore, defendant bank being bound to reimburse its transferee, one who subsequently purchased the stock of defendant bank cannot complain of the execution of the notes.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 14; Dec. Dig. ☞6.]

3. BANKS AND BANKING ☞45—STOCKHOLDERS—RIGHTS OF.

Where defendant bank, which was in difficulties, transferred its assets to another institution, which agreed to pay its debts and liabilities, one who subsequently purchased stock of the defendant bank could not, the debts having exceeded the assets, reclaim assets remaining before he had paid the amount of indebtedness for which defendant was liable to its transferee.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 61; Dec. Dig. ☞45.]

Appeal from the District Court of the United States for the District of Arizona; William H. Sawtelle, Judge.

Bill by the Western Underwriting & Mortgage Company, a corporation, against the Valley Bank of Phœnix, a corporation, and another. From decree dismissing the bill, complainant appeals. Affirmed.

In Equity. Suit by appellant as minority stockholder in the Union Bank & Trust Company, in behalf of itself and other stockholders similarly situated, for the cancellation and return of a certain promissory note issued by the Union Bank & Trust Company to the Valley Bank of Phœnix, appellees; for a decree declaring null and void a certain transfer of assets, securities, and choses in action from the Union Bank & Trust Company to the Valley Bank of Phœnix; and for an accounting. The cause was tried before the District Court, sitting without a jury, and, the plaintiff having introduced all its evidence, defendant the Valley Bank of Phœnix moved for dismissal of the action upon the ground that the evidence was not sufficient to sustain the allegations of the complaint or to entitle plaintiff to any relief, which motion was granted by the court and the action dismissed. Plaintiff appeals.

The appellees are corporations organized and existing under and by virtue of the laws of the state of Arizona and engaged in a general banking business in that state. On January 27, 1912, the Union Bank & Trust Company, being financially embarrassed, entered into a written contract with J. F. Cleveland, John P. Orme, George H. N. Luhrs, and J. M. Swetnam, as parties of the second part, and the Valley Bank of Phœnix, as party of the third part, whereby it was agreed that the Valley Bank would undertake to pay all the debts and liabilities of the Union Bank & Trust Company specified in a schedule attached to the contract and marked "Exhibit A," in consideration of which the Union Bank & Trust Company delivered to the Valley Bank all its cash on hand, furniture, negotiable paper, bonds, stocks, and all other choses in action; the parties of the second part guaranteeing, at the end of three years, to indemnify the Valley Bank should the assets so transferred be insufficient to discharge all the debts and liabilities. It was further agreed that, should the guarantors pay any such deficiency, the Valley Bank would deliver to them all of said assets then in its hands not reduced to cash.

In the month of May, 1913, there was had an adjustment and statement of account between the Union Bank & Trust Company and the Valley Bank

in connection with the contract of January 27, 1912, at which adjustment and statement it was found by representatives of both of the appellees and the guarantors on the contract that there still remained unpaid and owing to the Valley Bank from the Union Bank & Trust Company, on account of such expenditures in its behalf made by the Valley Bank, after deducting all moneys collected theretofore by the latter, the sum of $164,432.46; and at the time of the adjustment, or shortly thereafter, the note of the Union Bank & Trust Company in the sum of $164,432.46, payable and due on the 27th day of January, 1915, was delivered by it to the Valley Bank.

On December 30, 1913, the Union Bank & Trust Company, as party of the first part, entered into a contract with the Valley Bank, as party of the second part, in which it was recited that, under the terms of the contract of January 27, 1912, there was yet an indebtedness owing from the first party to the second party in the sum of $103,000, which exceeded the probable value of the securities then held by the second party under said agreement of January 27th in the estimated amount of $75,000. Under the new agreement, the Union Bank & Trust Company transferred to the Valley Bank certain property therein specified, in consideration of which the latter agreed to release the former from all claims and demands whatever. It was therein provided, however, that such release should in no way affect the rights and privileges then held and possessed by the Valley Bank against the guarantors, arising out of or by virtue of the said contract and agreement of January 27, 1912. This transaction was consented to by the guarantors aforesaid.

On March 5, 1914, appellant, as minority stockholder, brought this suit against the appellees, alleging, among other things: That in the month of February, 1913, one J. K. Tennant, who at that time was the president of the Union Bank & Trust Company, represented to complainant that the outstanding debts and obligations due and owing from the Union Bank & Trust Company had been liquidated by and under the terms of the contract of January 27, 1912, with the Valley Bank, and that the Union Bank & Trust Company was a going corporation in a solvent condition, and solicited from complainant the transfer by it to the Union Bank & Trust Company of negotiable securities for the purpose of being handled and invested by the latter in the state of Arizona. That on the 26th day of March, 1913, the Union Bank & Trust Company issued in the name of complainant 472 shares of the preferred stock and paid to complainant the sum of $17,636 in money, and thereupon complainant, by proper indorsements and assignments, transferred, set over, and assigned unto the Union Bank & Trust Company first-mortgage notes and mortgages and delivered said assignments to the latter. It is alleged that the transaction in May, 1913, by which a note in the sum of $164,432.46 in favor of the Valley Bank was issued, was wholly void for the reason that the board of directors were unauthorized to execute the said note; that the meeting of said board was neither called nor held in conformity with the by-laws of said the Union Bank & Trust Company; that said note was given wholly without any consideration passing from the Valley Bank to the Union Bank & Trust Company. It is further alleged: That said promissory note was without consideration for the further reason that under the terms of said contract of January 27, 1912, there could exist no liability on the part of the Union Bank & Trust Company or on the part of the individuals acting thereunder as guarantors until such liability, if any there existed, should be ascertained at the expiration of three years from the date of said contract, and that, in the execution and delivery by said board of directors of said promissory note, said board of directors acted fraudulently and without authority and in a manner so as to greatly injure the complainant and other stockholders similarly situated, as stockholders of said the Union Bank & Trust Company, and greatly depreciate the value of the stock so by it owned to the extent of 472 shares of preferred stock, as in the complaint set forth, and such stock had thereby become and then was greatly depreciated in value. That the board of directors of the Union Bank & Trust Company, at a meeting of said board on the 30th day of December, 1913, purporting to have been called for the purpose by resolution of the board of directors and not of the stockholders of the Union Bank & Trust Company, entered into a certain contract with the Valley Bank, under and by the terms of which, and purporting to act in

behalf of the Union Bank & Trust Company, the directors thereof again transferred, assigned, and set over unto the Valley Bank all of the property and assets then owned by the Union Bank & Trust Company, included in which assignment were all of such portions as then remained in the hands of the Union Bank & Trust Company of the assets by said the Union Bank & Trust Company acquired by purchase from the complainant. And that the transfer of assets by the board of directors of the Union Bank & Trust Company to the Valley Bank, so by said board of directors made on the 30th day of December, A. D. 1913, was void for the reasons: that by the terms of said resolution an attempted transfer of all of the assets of the Union Bank & Trust Company was made by said board of directors thereof, without action or authority given by the unanimous consent of the stockholders thereof, or by the consent of any stockholders had or obtained at a stockholders' meeting; that said transfer was void for want of consideration moving from the Valley Bank to the Union Bank & Trust Company.

The Valley Bank filed its answer on February 23, 1915, denying the various allegations of the complaint, and pleading a verbal contract which it alleged was entered into simultaneously with the execution of the written contract of January 27, 1912, and under the terms of which the transfer of assets provided for in the written contract was simply in the nature of a pledge and not a sale.

The complainant thereafter moved the court to strike from the answer all that portion concerning the verbal agreement, upon the ground that the defendant should not be permitted to plead a parol contract for the purpose of altering the terms of the written contract of January 27, 1912, admitted by the defendant to exist. This motion was denied by the court.

Upon the trial before the District Court, sitting without a jury, the plaintiff having introduced all its evidence, defendant the Valley Bank moved for dismissal of the action upon the ground that the evidence was not sufficient to sustain the allegations of the complaint or to entitle plaintiff to any relief, which motion was granted by the court and the suit dismissed on April 14, 1915.

From the decree dismissing the suit plaintiff brings this appeal, alleging that the lower court erred: In denying its motion to strike from the answer of the Valley Bank all that portion relating to the parol agreement of January 27, 1912; in granting the motion of said defendant to dismiss, which ruling, it is alleged, was necessarily predicated upon the assumed existence of a parol contract alleged by defendant, by way of an affirmative defense, to have been executed contemporaneously with the written contract of January 27, 1912, without proof by the defendant that the written contract was not plain and unambiguous as to its terms, and without proof of any new or other consideration for the making of the parol contract; in granting the motion of said defendant to dismiss, which ruling, it is alleged, necessarily construed the contract of January 27, 1912, to be a contract of pledge and not a contract of sale.

George J. Stoneman and Reese M. Ling, both of Phœnix, Ariz., and E. J. Henning, C. A. A. McGee, A. J. Morganstern, and E. E. Hendee, all of San Diego, Cal., for appellant.

C. F. Ainsworth and Jos. H. Kibbey, both of Phœnix, Ariz., for appellee.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). [1] It is contended by the appellant that the court below, in dismissing the action, necessarily based its judgment upon the agreement of January 27, 1912, as modified by the parol agreement set up in the defendant's answer as an affirmative defense. Assuming that this is so, we do not think the objection is a ground for reversing the judgment. In Jones on Evidence, § 446, the author says:

"It has long been the settled rule that in courts exercising equitable jurisdiction it is admissible to prove by parol that instruments in writing apparently transferring the absolute title are in fact only given as security."

In Peugh v. Davis, 96 U. S. 332, 336 (24 L. Ed. 775), the Supreme Court had before it a deed absolute in form, but claimed to have been executed as security for a loan of money, and the question was whether evidence, written or oral, was admissible to show the real character of the transaction. The court said:

"That court (a court of equity) looks beyond the terms of the instrument to the real transaction; and when that is shown to be one of security, and not of sale, it will give effect to the actual contract of the parties. As the equity, upon which the court acts in such cases, arises from the real character of the transaction, any evidence, written or oral, tending to show this, is admissible. The rule which excludes parol testimony to contradict or vary a written instrument has reference to the language used by the parties. That cannot be qualified or varied from its natural import, but must speak for itself. The rule does not forbid an inquiry into the object of the parties in executing and receiving the instrument."

In Brick v. Brick, 98 U. S. 514, 516, 25 L. Ed. 256, the rule declared in Peugh v. Davis was followed with respect to a pledge of a certificate of stock as security for a loan of money; and in Cabrera v. American Colonial Bank, 214 U. S. 224, 230, 29 Sup. Ct. 623, 626 (53 L. Ed. 974), in which it was claimed that a bill of sale was an absolute conveyance and accomplished the payment of certain debts to a bank, the court said:

"The face of an instrument is not always conclusive of its purpose. In equity, extrinsic evidence is admitted to show that a conveyance absolute on its face was intended as security. The rule regards the circumstance of the parties and executes their real intention, and prevents either of the parties to the instrument committing a fraud on the other by claiming it as an absolute conveyance, notwithstanding it was given and accepted as security. In other words, the real transaction is permitted to be proved."

[2] But aside from the parol agreement set up in the answer, we are of opinion that the written agreement of January 27, 1912, bears on its face the conclusive evidence that the assets therein transferred to the Valley Bank were transferred as security for a debt, and not an absolute sale. The conditions of the agreement were secured by guarantors. What were the conditions for which this security was given? To secure the payment to the Valley Bank of *any deficiency* that might remain *unpaid* after applying all of the cash received and collected and all of the securities collected and reduced to cash upon the amount of the *indebtedness* of the Union Bank & Trust Company which the Valley Bank should be able or be obligated to pay under the terms of the contract; and the guarantors further agreed that they would repay to the Valley Bank all costs and expenses which the Valley Bank might incur in reducing the assets to cash or in collecting the moneys due on such securities and evidences of indebtedness as were collectible.

Then follows the promissory note dated May 17, 1913, executed by the Union Bank & Trust Company for the sum of $164,432.46 and delivered to the Valley Bank as evidence of the *indebtedness then existing* and due the Valley Bank from the Union Bank & Trust Company. If the agreement of January 27, 1912, was a sale, and not a pledge to

the Valley Bank of the securities therein mentioned, why was this note given more than a year later as evidence of the *indebtedness* of the Union Bank & Trust Company at that time? Manifestly it had no place in an agreement of sale, but it did have a place in dealing with an *indebtedness* arising from payments to be made to the creditors of the Union Bank & Trust Company.

Then follows the agreement of December 30, 1913, when the *indebtedness* of the Union Bank & Trust Company to the Valley Bank had been reduced to $103,000, but which at that time exceeded the probable value of the securities then held by the Valley Bank in the estimated sum of $75,000. The agreement further provides for the transfer of other securities to meet this *unsecured indebtedness* and a continuance of the personal security of the guarantors for the indebtedness then existing.

Looking now at the provision of the agreement of January 27, 1912, transferring to the Valley Bank the assets therein mentioned *absolutely*, we must now construe that provision, not as a sale, but as a transfer intended to enable the Valley Bank to deal with the assets of the Union Bank & Trust Company with power to convey title.

[3] We find that the allegation of the complaint that in March, 1913, complainant purchased 472 shares of the preferred stock of the Union Bank & Trust Company upon representation made by the president of the latter corporation that the outstanding debts and obligations due and owing from the Union Bank & Trust Company to The Valley Bank had been liquidated under the terms of the contract of January 27, 1912, and that the Union Bank & Trust Company was a going corporation and was in a solvent condition, is not supported by the testimony; and we are of opinion that the evidence which does support the allegations of the complaint shows that the assets transferred to the Valley Bank under the written agreements referred to were transferred as security for an indebtedness, and not as a sale; that such transfer was legal; and, under any theory of this case, the complainant cannot recover assets remaining in the Valley Bank until it has first repaid to that bank the amount due as a deficiency on account of the debts of the Union Bank & Trust Company paid by the Valley Bank.

It follows that the decree of the lower court must be affirmed, and it is so ordered.