(No. 21749.—)
PATRICK E. McDONNELL, Appellant, *vs.* ELIZABETH J. HOLDEN *et al.* Appellees.

*Opinion filed April 22, 1933.*

STONE, J., dissenting.

COBURN, KEARNEY & COBURN, (MARSHALL V. KEAR-NEY, of counsel,) for appellant.

SAMUEL SHAW PARKS, for appellees.

Mr. CHIEF JUSTICE HEARD delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Cook county dismissing for want of equity a bill filed by appellant, Patrick E. McDonnell, against Elizabeth J. Holden (hereinafter called the appellee) and the Mutual Real Estate Improvement Corporation, praying that two certain quit-claim deeds, absolute on their face and covering the premises herein involved, be held as having been given as security for a loan, and, in fact, mortgages, and also praying for an accounting and leave to redeem upon payment of the amount found to be due.

This is a suit between appellant, a man aged eighty-eight years, the father of ten living children, and his daughter. It was entirely a family affair, as nine of the children, or their spouses, testified on one side or other of the case, some of them on both sides, and no other witnesses were heard. As frequently happens in a case of that character the evidence was very conflicting, but certain salient facts are outstanding which seem to be conclusive. In 1912 appellant was the owner of the property involved, it being a triangular-shaped tract of land, with a frontage of 800 feet on Kedzie avenue, in the city of Chicago, with a depth of about 500 feet to the base of the triangle and con-

taining 126,270 square feet, with a perpetual privilege of free water from the city mains. The property was improved with a fourteen-room residence, equipped with a heating plant and electric lights. There was a machine shop on the property, which was about 30 by 40 feet in size, which appellant used for his mechanical work. Some time previous to 1912, Patrick McDonnell, Jr., a son of appellant, who appeared herein as a witness for appellee, conceived the plan of utilizing the water rights connected with the land by erecting and operating a laundry. He wanted his father to deed him part of the land. His father refused but did rent part of it to him. Patrick, Jr., formed a corporation and put $4000 into laundry buildings on the land. He or the corporation bought some lumber for the construction work from the Hines Lumber Company, and when default was made in the payment for it the lumber company foreclosed its lien in the amount of $1505 and the entire property was ordered sold to satisfy the debt. Appellant was unable to pay the judgment, and his son-in-law, Dr. Richard Haley, bought the certificate of sale from the purchaser of the property at the master's sale and took title by master's deed, which he held for eleven years. During that time appellant occupied the property, collected the rents and paid the taxes, except three times, when he borrowed the money from Haley with which to pay them. On August 5, 1924, Haley and his wife made and delivered two quit-claim deeds to the premises in question and gave them to appellee. She did not record the deeds until April 16, 1926, nor were they acknowledged until April 10, 1926, by the makers thereof. After the making of the deeds by Haley to appellee, appellant rented parts of the property to various tenants, collected the rents therefor, managed it and up to the time of the trial was occupying it. Appellee was a single woman until September 1, 1926, when she was married to Henry Holden. After her marriage appellant requested appellee to give him a quit-claim deed to the prop-

erty and offered to give her a mortgage thereon for the amount of her investment and interest. She refused, and on November 19, 1928, he filed his bill of complaint herein. Thereupon appellee on the 20th day of November, 1928, deeded the property to the Mutual Real Estate Improvement Corporation, a corporation formed by appellee, her husband and her sister, Gertrude Dunn, in which the shares of stock were of five dollars par value, of which appellee held all the stock except five shares held by her sister Gertrude and about the same number of shares held by Henry Holden. On the books of the Mutual Real Estate Improvement Corporation is an inventory in the handwriting of appellee: "Real estate situated on S. Kedzie avenue and old Ill. and Mich. canal approximately at 126,270 sq. ft. as per incorporation papers. Valued at $80,000."

The testimony is undisputed that during the period when appellant might redeem from the mechanic's lien judgment he was attempting to procure a loan for that purpose, and that Haley offered to make appellant such loan and hold the title to the property as security for the loan. Haley did not redeem from the master's sale but purchased the certificate of sale and at the expiration of the redemption period took title in himself. Haley testified on this subject: "I took over the property. At the time I took it over it was not understood that I was to make a trust deed. I only held a mortgage—not a trust deed. The time specified when Patrick McDonnell was to take back his property was when I got the money. I understood I was to hold the property for him. I never exercised any ownership over it." The evidence clearly shows that appellee knew that appellant had an interest in the property while the title was in Haley. Prior to Haley's making the deeds to appellee he had a conversation with her in which he stated that he would like to get his money out of the premises, and she offered to pay him therefor. No price was fixed. Haley requested appellee to bring appellant with

her when the amount which she was to pay was to be fixed and the arrangement made for the transfer of the property, as appellant had to be satisfied. The price which she was to pay was fixed by Haley and appellant, and consisted of the amount which Haley had paid for the master's deed and interest thereon and some taxes which he had paid and interest thereon, altogether amounting to $3389.55, at which time appellee gave to Haley a check dated July 10, 1924, for $3389.55. Later, Haley called appellee and informed her that he had found another receipt for taxes which he had paid, and she sent him on July 22, 1924, her check for $147.74 in payment therefor. The next day he again informed her that he had found another receipt for taxes which he had paid amounting to $146.50, and she sent him on that date her check in payment therefor. In a private book kept by her in which the items were entered in her handwriting, were two pages upon each of which appeared an account with reference to the property, containing the amount she had paid, each item of taxes thereafter paid, with interest thereon, and the total amount "due" to different dates. On one of these pages the account was crossed out by two lines drawn diagonally through it, and the other account evidently contained some erasures. No good reason appears why appellee should have kept an account in this manner if she considered herself the owner of the property, but it is consistent with appellant's claim that she was holding the property in trust, to be turned over to him upon the payment of the amount "due."

Appellant's claim is enhanced by the fact that the consideration for the deeds was entirely out of proportion to the value of the property. The amount which Haley paid for the master's deeds was $1500. The amount that appellee paid Haley was $3683.79. Whether the value of the property be taken as $80,000, as carried on the books of the corporation; $63,135, a price which appellant testified appellee told him was a fair price; $43,994.50, an

offer which appellant testified was made to him for the property and refused, or $12,627, the value placed thereon by a brother of appellee and the only one of appellee's witnesses who placed a value on the premises, the price paid by both appellee and Haley was grossly inadequate. While, generally, mere inadequacy of price will not be considered as sufficient to set aside a deed or to have a deed declared a mortgage or the basis of a trust, yet gross inadequacy of price is always considered as an evidentiary fact. *Totten* v. *Totten,* 294 Ill. 70.

The evidence shows conclusively that at the time of the making of the deed from Haley to appellee she knew that appellant was in possession of the property and claimed to have an interest therein, and that at the time of the transfer from appellee to the corporation each of the officers and stockholders of the corporation had knowledge of such possession and claim of interest. Under the system of recording the evidences of title to real estate in force in this State, the actual occupancy of land is equivalent to the record of the instrument under which the occupant claims, so far as notice to subsequent purchasers is concerned, (*Garlick* v. *Imgruet,* 340 Ill. 136,) and a purchaser is bound to inquire by what right or title the occupant holds, and the premises are taken by the purchaser subject to that title or interest, whatever it may be. (*Moore* v. *Machinery Sales Co.* 297 Ill. 564; *Coari* v. *Olsen,* 91 id. 273; *Carr* v. *Brennan,* 166 id. 108.) The rule is, that where one purchases land of another which is at the time of the purchase in the actual, open, exclusive and visible possession of a third person, such possession is constructive notice to the purchaser of all the rights whatever of the possessor of the land at the time of the purchase. (*Union Bank of Chicago* v. *Gallup,* 317 Ill. 184; *Mauvaisterre Drainage District* v. *Frank,* 313 id. 431.) Where a grantor does not deliver possession to the grantee but remains in the open, exclusive possession of the premises, a party taking a deed from the grantee dur-

ing such occupancy is charged with notice of all the rights and equities of the first grantor. (*Ronan* v. *Bluhm,* 173 Ill. 277; *Bruner* v. *Manlove,* 3 Scam. 339.) In *Dyer* v. *Martin,* 4 Scam. 146, it is said: "Martin's possession was notice to all the world that he had some interest in the land, and whoever bought the land while that possession continued, took it subject to that interest, whatever it might be.—1 Story's Eq. 388-9; 2 Vesey, 437; 13 Vesey, 118; 2 Paige, 300; 3 Paige, 421; 16 Vesey, 249; 5 Jones' Ch. R. 29." The main questions, therefore, to be decided are whether or not, at the time of the making of the deeds, appellant had an interest in the premises, and if so, the extent of such interest.

Appellee claims that Haley's deed from the master in chancery could not be considered as a mortgage as in making such purchase he used his own money, and that at the time of the making of the deed the relation of debtor and creditor did not exist between Haley and appellant. Where title is acquired by a purchaser through a master's deed, such deed will not be considered as a mortgage where at the time of such purchase the party claiming to be the mortgagor had permitted the period of redemption to expire and no indebtedness existed between him and the purchaser. (*Eames* v. *Hardin,* 111 Ill. 634.) Title acquired by the purchase of a certificate of sale at the request of the mortgagor, and a master's deed thereon, will not be considered as a mortgage where at the time of such purchase the mortgagor's period of redemption had expired and no indebtedness existed between him and the purchaser. (*Burgett* v. *Osborne,* 172 Ill. 227.) This rule does not apply in this case, as at the time of the making of the arrangement between appellant and Haley with reference to the property the time of redemption had not expired, and if in pursuance of that arrangement Haley advanced his money to procure the title for appellant's benefit, then the relation of debtor and creditor existed between them and there was an indebtedness

which could be secured by a mortgage. A certificate of sale for certain land, and the sheriff's deed based thereon, are not conclusive of their true character, and it is competent to show by parol that they were, by agreement between the owner and the purchaser, intended as a mortgage. (*Trogdon v. Trogdon*, 164 Ill. 144; *Whittemore v. Fisher*, 132 id. 243.) Where the owner of land which has been sold under an execution made an arrangement with his tenant to redeem the same, and the tenant took an assignment of the certificate of purchase in his own name while acting as the agent of the owner, the landlord, and afterwards procured the sheriff to make a deed to himself instead of to the principal, it seems this inequity will constitute such agent the trustee of the principal. *Moore v. Pickett*, 62 Ill. 158.

A fiduciary relation existed between appellant and Haley at the time of Haley's acquisition of the deed from the master in chancery. From the authorities cited it would appear that if at that time Haley was acting as appellee's agent to redeem the premises and instead of redeeming took the title in his own name, the law would raise a trust *ex maleficio,* and he would hold such title as a mortgagee and not as the owner of the fee. If, on the other hand, while appellant still had title to and an interest in the premises, an arrangement was made between the parties whereby Haley was to loan to appellant the money necessary to acquire the master's deed, and such loan was made, then the proceeds of such loan belonged to appellant, and if Haley acquired the master's deed by using the proceeds of such loan then a resulting trust would arise in favor of appellant. (*Kochorimbus v. Maggos*, 323 Ill. 510.) In that case it was said: "Constructive trusts are divided into two general classes: one consisting of those cases in which actual fraud is considered as equitable ground for raising the trust, and the other of those cases in which the existence of a confidential relation, and subsequent abuse of the confidence reposed, are sufficient to take the case out of the

Statute of Frauds. (*Miller* v. *Miller,* 266 Ill. 522.) A party may voluntarily assume a confidential relation towards another, and if he does so he cannot thereafter do any act for his own gain at the expense of that relation. (*Reed* v. *Peterson,* 91 Ill. 288.) A fiduciary relation is not limited to cases of trustee and *cestui que trust,* guardian and ward, attorney and client, or other recognized legal relation, but it exists in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed. The origin of the confidence is immaterial. It may be moral, social, domestic or merely personal. If the confidence, in fact, exists, is reposed by the one party and accepted by the other, the relation is fiduciary, and equity will regard dealings between the parties according to the rules which apply to such relation. (*Higgins* v. *Chicago Title and Trust Co.* 312 Ill. 11.) While neither an express trust nor a resulting trust can be created by parol agreement, yet where the transaction is such that at the moment the title passes either a resulting or constructive trust would arise in the absence of a parol agreement, such an agreement will not prevent a trust arising.—*Smith* v. *Smith,* 85 Ill. 189; *Wallace* v. *Carpenter,* id. 590; *Williams* v. *Brown,* 14 id. 200." This is true, regardless of the existence of actual fraud, undue influence or coercion, and often directly contrary to the intention of the one holding the legal title. *Housewright* v. *Steinke,* 326 Ill. 398.

It is claimed by appellee that if appellant's contentions are correct he is barred from maintaining his suit by reason of *laches.* Laches cannot be maintained as a defense to this action. During the entire time that Haley held title to the land, and up until the time of the trial, Haley had always recognized appellant's claim to be the owner of the land and that he was holding the title in trust for him. When appellee took a quit-claim deed to the premises from Haley with notice of appellant's possession and claim of title, she acquired by her quit-claim deed no greater interest in the

premises than Haley had therein. She acquiesced in appellant's possession of the premises and retention of the proceeds of the rent therefrom, and at no time did she do or say anything to disturb appellant in the enjoyment of his rights until just shortly before the bringing of the suit.

The decree will be reversed and the cause remanded, with instructions to enter a decree in accordance with the prayer of the bill and the views herein expressed.

*Reversed and remanded, with directions.*

Mr. JUSTICE STONE, dissenting.