## KLINE v. YOKOM.
### No. 7471.

Circuit Court of Appeals, Seventh Circuit.
Feb. 6, 1941.

L. A. Stebbins and Hyman A. Pierce, both of Chicago, Ill., for appellant.

Walter H. Eckert, Walter W. Ross, and Wm. W. Speer, Jr., all of Chicago, Ill., for appellee.

Before SPARKS and KERNER, Circuit Judges and BRIGGLE, District Judge.

KERNER, Circuit Judge.

Plaintiff James F. Kline brought an action against the Central Life Insurance Company of Illinois pursuant to the Federal Declaratory Judgment Act, 28 U.S. C.A. § 400, involving his rights in an insurance policy originally issued by the Security Life Insurance Company of America. In his complaint Kline claimed (a) he was the sole owner of the policy; (b) he had the right to change the beneficiary; and (c) he was entitled to all disability benefits. Central had reinsured the policy and it filed a cross-complaint interpleading George E. Yokom. Yokom claimed to be the owner of the policy and of all rights and interests therein other than the right of disability benefits. The cause was tried to a jury. The jury returned special verdicts. Yokom moved for judgment notwithstanding the verdicts, which the trial court granted. The court then rendered judgment that Yokom was the owner of the policy subject to the interest of Kline in and to the disability benefit provisions thereof. To reverse this judgment Kline appealed.

The policy involved, issued November 3, 1925 upon the life of Kline, provides for the payment of an annual premium of $698.25 and in it M. E. Miller Realty Corporation, of which Kline was vice president, was named as beneficiary, subject to the right of Kline to change the beneficiary at any time. It also provides for payment of disability benefits of $250 per month to Kline in the event of his becoming totally disabled. During disability premium payments are waived.

Prior to and at the time of the issuance of the policy M. E. Miller Realty Corporation was engaged in the sale of real estate. Four insurance salesmen agreed to buy certain of the real estate, provided policies were purchased from Security so as to furnish them (the insurance salesmen) with commissions enabling them to make a down payment on the real estate purchased. To make certain their commissions the salesmen insisted that Realty Corporation guarantee the payment of policy premiums for two years. The Realty Corporation did so contract and paid the first annual premium.

Shortly after the issuance of the policy Realty Corporation became financially embarrassed and there was dissension among its four officers and stockholders. Kline was one of the officers and stockholders. To assist the Realty Corporation Yokom, early in 1926, loaned to Realty Corporation $26,000 and in August, 1926, he purchased all its assets and assumed its obligations.

In May, 1926, Kline, while at Orlando, Florida, became ill with arthritis deformans. October, 1926, he wrote Yokom, a resident of Port Huron, Michigan, requesting that Yokom pay the second premium on the policy. November 15, 1926, he wrote Yokom again stating that if

Yokom would pay a quarterly premium due on December 3, 1926, and maintain the policy until his (Kline's) claim for disability could be allowed, Kline would reimburse Yokom with interest. Yokom answered that before he would pay the premium Kline must agree to reimburse Yokom out of disability benefits for the premiums Yokom should pay on both of Kline's policies.[1] In this letter to Kline, Yokom enclosed an assignment of the policy in which Kline assigned all his right, title and interest to Yokom "as its or their interest may appear." Kline executed this assignment on November 23, 1926, and thereupon Yokom paid Security $185 to cover the quarterly premium on the policy in question.

December 30, 1926, Kline forwarded to Security his proofs of claim or disability benefits. In January, 1927, Yokom made four trips to the office of Security at Chicago, Illinois, concerning the claim and in February, 1927, visited Kline in Florida. While there he had Kline examined by physicians and obtained additional proofs regarding Kline's disability, Yokom paying all expenses thereby incurred.

February 28, 1927, Kline requested Security not to make payments under the policy to Yokom. March 5, 1927, Security advised Kline that it had received additional information from Yokom concerning the claim for disability benefits, that his claim for disability benefits was allowed, and requested Kline to inform Security as to what interest Yokom had in the policy.

Kline, Yokom and Security met at Detroit, Michigan, each party being represented by an attorney at law, and after two days of negotiations an agreement dated April 28, 1927, defining the rights of Kline and Yokom in the policy, was drafted and signed. The instrument recited that Kline and Yokom each claimed an interest in the policy and "now wish to have their respective rights therein defined" and by the instrument Kline agreed that he claimed no interest in the policy except as to the payment of disability benefits; that out of the disability benefits there was to be paid to Yokom the sum of $1,250 and Kline expressly released "all interest of every name and nature,

he may have in either of said policies except as reserved in this agreement." It was also agreed that the name of the beneficiary would not be changed without the consent of the beneficiary and that the policy should be retained by Yokom. Thereafter Security made payments of disability benefits at the rate of $250 per month from March 1, 1927 to April 18, 1932, on which date suit was commenced for the appointment of a receiver for Security and in August, 1932, its outstanding policies were reinsured by the Central Life Insurance Company of Illinois.

In 1930 the Realty Corporation was dissolved and its interest in the policy was transferred to Yokom.

No further action was taken by Kline after the execution of the agreement of April 28, 1927, until February 26, 1938, when he notified Central that he desired to change the beneficiary. Central refused the request on the ground that Kline did not have that right. Thereupon Kline commenced the present suit.

At the close of all the evidence Yokom moved the court for a directed verdict and the court ordered the motion taken subject to the verdict. The verdict of the jury was in the form of answers to interrogatories. The jury found that the assignment of November 23, 1926, was for a consideration, but that the agreement of April 28, 1927, was without consideration. Thereafter the court sustained Yokom's motion to instruct the jury to find the issues in his favor, and rendered judgment that the agreement of April 28, 1927, was valid and binding, and declared Yokom to be the sole owner of the policy, subject only to Kline's interest in the disability benefits.

■■ The first contention necessary to be discussed is whether it was competent for Kline to testify to oral conversations surrounding the execution of the agreement of April 28, 1927, to prove that it was the understanding of the parties that the life benefits of the policy were assigned only for the purpose of security for the repayment of $1,250 advanced by Yokom.

It is true that the face of an instrument is not always conclusive of its purpose

---

[1] At the time of the issuance of the policy involved in this cause, another policy was issued upon the life of Kline, not now involved in this litigation.

and there are cases where extrinsic evidence is admitted to show that a conveyance absolute on its face was intended as security. In such cases the rule permits the real transactions to be shown.[2] But when the instrument shows upon inspection a complete legal obligation without any uncertainty or ambiguity as to the object and extent of the engagement, it is conclusively presumed that the whole agreement of the parties was included in the writing. Under such circumstances it is not permissible to establish by oral evidence a different contract from that expressed in the writing.[3] In our case the parties each claimed an interest in the policy and wished to have their respective rights defined. Yokom released all interest in the disability benefits except as to the payment of $1,250 and Kline expressly released to Yokom all interest except as to the payment of disability benefits, and the agreement was put in writing. It thus appears there was no uncertainty or ambiguity and consequently the writing must control. The oral evidence was incompetent.

 We now discuss Kline's principal contention that the assignment of November 23, 1926, and the contract of April 28, 1927, were without consideration.

The evidence is undisputed that the Realty Corporation was the beneficiary named in the policy; that the Realty Corporation and Yokom at all times had physical possession of the policy; and that Kline at no time prior to February 26, 1938, claimed any interest in the policy insofar as it related to the payment of death benefits. It is clear that Yokom claimed an interest in the policy because of the services rendered and expenses incurred in connection with obtaining the allowance of the disability claim. And so it was for the purpose of settling these respective rights and claims that the parties met in April, 1927. Whatever may have been their respective legal rights at that time, the fact remains that Yokom had an interest in the policy and Kline so admitted by the agreement. No fraud, actual or constructive, affecting the contract in its procurement or execution, was practiced, nor was Yokom's claim a mere pretense. On the contrary, both parties acted in good faith, with full knowledge of the facts, and it was under those circumstances that the parties compromised their differences. The most that can be said is that perhaps Yokom's rights were doubtful but even so, the consideration was ample to support the contract. The compromise of a doubtful claim, fairly obtained, is a sufficient consideration on which to found a contract, no matter what the ultimate result of a legal contest concerning the claim might have been.[4]

 Finally it is contended that the motion for judgment notwithstanding the verdict was not seasonably made. Rule 50 (b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. As before noted on April 26, 1940, at the close of all the evidence, Yokom presented his written motion for a directed verdict, which was taken subject to the verdict of the jury. After the return of the special verdicts a hearing on the motion for a directed verdict was considered by the court on May 17, 1940, at which time counsel for Yokom, by leave of court, presented an amended motion for a directed verdict. We are of the opinion the point is not well taken. The motion which was sustained was the same motion in amended form, which had been presented at the close of all the evidence and upon which the trial court reserved his ruling.

We think the judgment of the District Court was right. It is therefore affirmed.

[2] Cabrera v. American Colonial Bank, 214 U.S. 224, 29 S.Ct. 623, 53 L.Ed. 974; Trogdon v. Trogdon, 164 Ill. 144, 45 N.E. 575; and McDonnell v. Holden, 352 Ill. 362, 185 N.E. 572.

[3] Telluride Power Co. v. Crane Co., 208 Ill. 218, 70 N.E. 319; Fuchs & Lang Co. v. Kittredge & Co., 242 Ill. 88, 89 N.E. 723; Sterling-Midland Coal Co. v. Coal & Coke Co., 334 Ill. 281, 165 N.E. 793 and International Trading Co. v. John Sexton & Co., 7 Cir., 24 F.2d 12.

[4] Honeyman v. Jarvis, 79 Ill. 318; McDole v. Kingsley, 163 Ill. 433, 45 N.E. 281; Adams v. Crown Coal & Tow Co., 198 Ill. 445, 65 N.E. 97; Walker v. Shepard, 210 Ill. 100, 71 N.E. 422.