TEÓFILO MARXUACH PLUMEY, Plaintiff and Appellee, *v.* CAROLINA ACOSTA Y ACOSTA, Defendant and Appellant.

No. 4475.   Argued December 13, 1928.—Decided July 23, 1929.

*M. Acosta Velarde* for the appellant.   *M. Tous Soto* for the appellee.

Mr. Justice Texidor delivered the opinion of the court.

The essential allegations of the complaint herein, filed by Teófilo Marxuach Plumey against Carolina Acosta y Acosta in the District Court of San Juan, are: that the plaintiff and the defendant contracted marriage on February 24, 1906, and were divorced by a judgment of December 27, 1923; that the plaintiff owned on December 27, 1923, as his separate estate, the following properties, to wit: (*a*) a $7,000 undivided share in house number 42 in Cruz street of San Juan, P. R., valued at $9,000; (*b*) a brick house with flat roof at 13 General Contreras street, formerly Sol street, in San Juan, P. R.; (*c*) a two-story brick house with flat roof at 127 General Contreras street, formerly Sol street in San Juan, P. R.; and (*d*) another house (stone, with flat roof) and lot at 139 General Contreras street, formely Sol street, in San Juan, P. R.  He alleged in the second count of the complaint that the conjugal partnership between him and the defendant owned on December 27, 1923, the following properties: a one-story frame house and lot at Condado, a ward of Santurce, in San Juan, P. R.; a two-story concrete house in the same ward of Santurce; and that both properties are producing income to an amount which is stated. In the third count he alleged: that the said conjugal partnership, in order to acquire the house in Wilson street and lot in España street, had borrowed $5,800 from the Banco Territorial y Agrícola de Puerto Rico; $1,900, on a note, from the same bank and $1,000 from the Banco Popular; that it owed $850 to Merino Rodríguez Bros.; that it also owed to the American Colonial Bank of Porto Rico $3,000, and $6,187 to José Montilla by reason of certain construction work undertaken by the plaintiff in partnership with the said Montilla.  He alleged as a fourth cause of action that the

partnership referred to has not been liquidated and that no agreement has been made for its liquidation; that by order of the court he has been paying the defendant $300 monthly. He prayed for a declaration of separate ownership in the properties claimed by him as his separate estate, and for the rents and profits thereof from December 27, 1923; for a statement of the assets and liabilities of the said conjugal partnership covering the properties and debts alleged by him; that a liquidation be made of the said partnership and that a commissioner be appointed for that purpose; and that the costs be taxed against the defendant should she oppose the action.

The defendant in her answer denied that the plaintiff was the separate owner of the properties described in the complaint; she denied their value as alleged in the complaint and also the value alleged as to those properties mentioned in the second count, and that the conjugal partnership owned only the properties mentioned therein; she denied that the loans referred to by the plaintiff were secured for the purpose of buying the properties mentioned by him and that the conjugal partnership had any debts as alleged; and she likewise denied that the plaintiff had complied with the orders of the court in regard to payment of $300 monthly to her. She set forth in a cross-complaint allegations as to the marriage and divorce between the defendant and the plaintiff; that they acquired during their marriage, besides the properties mentioned in the complaint, an urban property, a one-story stone house and lot at 139 General Contreras, formerly Sol, street, in San Juan, P. R.; a Columbia Six automobile; a machine for mixing concrete; a mortgage credit for $800; a house and lot at Minillas, Santurce; two additional mortgage credits for $500 each; another house in McKinley street, Condado, Santurce; and a $2,000 deposit in a bank; that they had no debts; that the above estates are owned undividedly, and that the parties have been unable to agree in regard to the partition thereof. And she prayed for a liqui-

dation of the partnership and the partition of the joint interests.

The cross-complaint was answered by the plaintiff and counter-defendant, denying the allegation therein as to the value of the automobile, which he claimed to be lower, and alleging: that the vehicle remained in the possession of the counter-defendant to compensate him for the furniture which was retained by the counter-plaintiff; that the house at 139 General Contreras street was the separate property of the counter-defendant, who bought the same from Josefina Plumey, and he denied having in his possession any moneys as proceeds from the sale thereof; that the concrete mixer had belonged to a civil partnership formed between the counter-defendant and Mr. Montilla, to whom it had been allotted at the dissolution of the said partnership; that the mortgage credit for $800 had been recovered judicially and the mortgaged house adjudicated to the creditor and sold by the conjugal partnership together with the lot at McKinley street; that the other mortgage credit was collected by the conjugal partnership; and that he believes that the third mortgage credit mentioned was likewise collected. He denied the existence of any bank deposit in favor of the conjugal partnership except the one delivered to the counter-plaintiff, and he alleged the existence of debts owed by the partnership, especially those set forth in the complaint.

The case went to trial and the court rendered judgment for the plaintiff, ordering the liquidation of the conjugal partnership and the appointment for that purpose of a commissioner to make partition.

From that judgment the present appeal has been taken by the defendant.

Only the appellant has filed a brief, in which seven errors are assigned. The first is as follows:

"1. The court committed manifest error and abused its discretion in allowing the appellee, over the objection and exception of the

appellant, to introduce evidence in rebuttal which was not such rebuttal and which was inadmissible under the pleadings.''

This assignment is argued jointly with those numbered 2 and 3, which read as follows:

''2. The court committed manifest error and abused its discretion in allowing the appellee, over the objection and exception of the appellant, to introduce parol evidence to vary and contradict the contents of public instruments.

''3. The court committed manifest error and abused its discretion in allowing the appellee, over the objection and exception of the appellant, to introduce parol evidence to contradict the contents of public instruments as against the allegations of the complaint.''

It appears from the pleadings that the issue was finally reduced thus: (a) The plaintiff alleged to be the separate owner of the properties described in the complaint, namely: a house at 13½ Sol, now General Contreras, street; a house at 127 of the same street; a house at 139 of the same street. (b) The defendant denied that the plaintiff was the separate owner of the above properties.

Both parties refer to December 27, 1923, as the date of the dissolution of their marriage.

The following documents were introduced in evidence by the plaintiff:

1. A conveyance dated February 27, 1908, from the plaintiff's parents to him and others, as an advance on the inheritance, of a two-story house at 4 Cristo street, in San Juan. (Pages 104 and 105 of the statement of the case.)

2. Deed of partition of the estate of José M. Marxuach (pages 106, 107 and 108 of the statement of the case) containing the award of a $4,500 undivided half-interest in house 42 Cruz street, in San Juan, to Teófilo Marxuach Plumey; and likewise an award of a $900 interest in a one-story brick house at 13 Sol street, in San Juan, in favor of the same person.

3. Deed of partition of the estate of Josefina Plumey awarding to Teófilo Marxuach Plumey, among other prop-

erties, house No. 139 General Contreras, formerly Sol, street in San Juan. (Page 109 of the statement.)

He put in evidence another deed of exchange between Teófilo and Teresa Marxuach regarding a condominium in house No. 4 of Cristo street.

The appellant has admitted that the plaintiff thus proved that prior to 1914 he became the owner by inheritance of a half-interest in house No. 4 of Cristo street; of a $4,500 undivided interest in house No. 42 Cruz street; of house No. 13 of Sol street; and of house No. 139 of the same street. There is a slight error in this, since the title to house No. 139 of Sol or General Contreras street consists of a deed of partition dated October 25, 1922.

The defendant introduced in evidence:

(a) A deed of sale dated July 19, 1926, from Teresa Marxuach and her husband Rafael Villavicencio to Teófilo Marxuach, married to Carolina Amelia Acosta, of a house, at first consisting of one story and afterwards of two stories, situated at 127 General Contreras, formerly Sol, street, in San Juan, said property being subject to a $5,000 mortgage in favor of Alejandro Suárez Villamil, to an annuity of $355.55 and to three more annuities. The purchase price was $8,000 of which the vendors admitted having received $3,000 in cash, the remaining $5,000 being retained by the purchaser for the payment of the mortgage. (Pages 112 and 113 of the statement of the case.)

(b) A deed of sale dated August 19, 1916, from Acisclo Marxuach Plumey to Teófilo Marxuach Plumey, married to Carolina Amelia Acosta, for $7,662, of the following properties and interests: (a) an undivided $2,000 interest in the $9,000 house at 42 Cruz Street, in San Juan, mortgaged for $1,500 to Juanita López de Abad; (b) one third interest in house No. 13 General Contreras street in San Juan; (c) a lot in the ward of Minillas of Santurce, in San Juan. The vendor admitted the receipt of $6,162 and the instrument recites that the remaining $1,500 is retained by the pur-

chaser for the payment of the mortgage. (Pages 114 and 115 of the statement of the case.)

At the close of defendant's evidence the plaintiff offered in rebuttal the record in suit No. 3061 brought by Teófilo Marxuach against Carolina Amelia Acosta, Acisclo Marxuach and Teresa Marxuach regarding nullity of agreements and contracts and acknowledgment of separate ownership of property. The defendant objected and alleged that in that suit the plaintiff sought to avoid certain deeds executed by himself, on the ground that such contracts were simulated, whereas in the present action it is sought to have certain properties declared separate property, and this calls only for documentary evidence to prove that fact, excluding secondary evidence. The court admitted the evidence as tending to prove that an action had been brought to challenge some deeds, and that there had been a decision which has been appealed. (Page 90 of the statement of the case.)

The plaintiff again took the stand on his own behalf, and when interrogated as to whether he had sold any properties to Acisclo Marxuach, the defendant objected on the ground that such evidence was improper on rebuttal since it could have been introduced as evidence in chief should it be admissible. The court, being of the opinion that in the present case it is sought to ascertain whether or not certain properties are community property, admitted the evidence on condition that if it turned out that it was intended to vary a public instrument, this would be taken into account when weighing the same. The defendant took exception thereto.

The witness further testified that he bought the properties from Acisclo Marxuach with his own money, and that, as to the property of Teresa Marxuach, the transaction was an exchange of properties, without any cash consideration having passed, although made to appear as a sale; that his undivided interest in house No. 4 Cristo street was given to Teresa Marxuach in exchange for her condominium in the house at 127 Sol street; that he did not receive any cash from Acisclo

Marxuach and that the properties conveyed by him to Acisclo were the same he had purchased from him. Cross-examined by the defendant he said: that the witness, after he was married, made some repairs in the house at 4 Cristo street, and reconstructed it as it is at present; that this happened in 1911; that it was the one-half interest in that house that he exchanged; that a son of his brother had a $2,000 interest in the house at 43 Cruz street which the witness purchased, and he being compelled to make repairs therein, borrowed $2,000 on the house, which he mortgaged; that it was necessary to repair the back wall and the balcony thereof and to build some rooms (bathroom, etc.) with the result that it has now two more rooms and a bathroom than it did before; that this took place during the continuance of his marriage. The above appears from pages 90 to 94 of the statement of the case.

We disagree with the practice of admitting particular evidence and reserving final ruling thereon. When the admissibility of a certain evidence is questioned, the party objecting is entitled to have his objection unequivocally and finally decided by the judge. The future course of the party making the objection, as regards the presentation of his evidence, depends on that decision. But if such decision is reserved and the party does not know definitely whether or not such evidence is to be admitted, he will be unable to marshal his evidence properly. To every item of admissible evidence its corresponding probative value must be given, and none to inadmissible evidence. But the parties are entitled to know definitely and with certainty whether or not any evidence offered is admissible.

The plaintiff submitted his deeds of purchase; the defendant submitted others to controvert the separate ownership of the properties. The plaintiff then offered parol evidence to rebut the deeds introduced by the defendant showing contracts of sale in some of which the plaintiff appears as pur-

chaser and in others as vendor, and further showing that the plaintiff was married at the time to Carolina Amelia Acosta.

The appellant discusses the application to be given to section 149 of the Code of Civil Procedure as to the discretion of the court in directing the order of proof. This point does not need much consideration. Such power is given to the court not to be used arbitrarily but to be exercised with sound discretion. It is only because of the great faith reposed in the courts that such powers are granted, and they are given precisely trusting that they will only be used when the necessity compels a deviation from the rigorous rule whose strict application might impede the ascertainment of truth and the attainment of justice.

That rule is that the party who opens the case must exhaust his evidence first. Accordingly, the allegations of the complaint must be proved before the defendant is required to introduce his evidence.

Of greater interest, however, is the argument made on the application of sections 25 and 101 of the Law of Evidence.

Section 25 of the Law of Evidence reads as follows:

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore, there can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreement other than the contents of the writing, except in the following cases:

"1. Where a mistake or imperfection of the writing is put in issue by the pleadings.

"2. Where the validity of the agreement is the fact in dispute.

"But this section does not exclude other evidence of the circumstances under which the agrement was made or to which it relates, as defined in section thirty-four, or to explain an extrinsic ambiguity, or to establish illegality or fraud. The term 'agreement' includes deeds and wills, as well as contracts between parties."

According to section 101 of the same statute, the truth of the facts recited in a written instrument is conclusively presumed, as to the parties to the instrument, from the recital

therein; but this rule does not apply to the recital of a consideration.

What is the situation of the parties in regard to these contracts? Are these contracts agreements in which the parties appeared as having adverse or distinct interests, clearly distinguishing themselves one from the other as transferor and transferee, vendor and purchaser? Undoubtedly not. The plaintiff and the defendant appeared on one side in those contracts and did not acquire or create distinct rights and obligations as between themselves, and the two sections cited evidently were enacted to safeguard rights and to secure obligations of all the parties to a contract.

What has been proven by the testimony of Marxuach? That really a transaction which appeared as a sale was nothing but an exchange; that essentially it did not involve the delivery of a price in consideration for the delivery of a property, but of the exchange of one property for another; and that in the transaction between him and Acisclo Marxuach no price or cash was involved but only the reinstatement of the title to a property which the plaintiff had previously conveyed to Acisclo Marxuach to avoid certain contingencies in a particular suit.

Free from all obscuration due to any technicality, the truth established by the testimony of Marxuach was the existence of a consideration, which was not precisely the one stated in the instrument. The effects of the latter, as between the parties subscribing the instrument, were not altered.

In *Cabrera* v. *American Colonial Bank*, 214 U. S. 224, 230, the Supreme Court of the United States said:

"But these are also the principles of the common law, and absolutely necessary if the written instrument is to be given a distinctive sanction of the agreement of the parties. But there are well-recognized exceptions. The face of an instrument is not always conclusive of its purpose. In equity, extrinsic evidence is admitted to show that a conveyance absolute on its face was intended as security."

And further:

"... This court said in Peugh v. Davis, 96 U. S. 332, 336, and repeated it in Brick v. Brick, 98 U. S. 516: 'As the equity upon which the court acts in such cases arises from the real character of the transaction, any evidence, written or oral, tending to show this is admissible.' The rule which excludes parol testimony, the court further said, has reference to the language used by the parties and does not forbid an inquiry into their object in executing and receiving the instrument. Hughes v. Edwards, 9 Wheat. 489; Russell v. Southard, 12 How. 139; Babcock v. Wyman, 19 How. 289. In Morgan's Assignees v. Strum, the rule of equity was enforced against the bill of sale of a vessel, though it was enrolled and also insured in the name of the transferee. See Livingston v. Story, 11 Pet. 351."

In *Roger* v. *Kelly*, 161 Pac. 1148, 1149, the Supreme Court of California held as follows:

"But the rule is that the parties are not estopped by recitals in an agreement with respect to its consideration. The true consideration, or the want of consideration, may always be shown by extrinsic evidence ...."

This doctrine has been followed in other cases in California (*Tidewater Southern Ry. Co.* v. *Harney,* 162 Pac. 664.)

In the light of this doctrine it can not be said that the lower court erred, as argued by the appellant.

The fourth assignment of error is as follows:

"The court committed manifest error and abused its discretion in overruling the motion of the appellant, in view of the evidence introduced by the appellee and admitted by the court, to amend her answer so as to allege as a special defense and new matter her allegations contained in civil action No. 3061."

The granting of an amendment to the answer under the circumstances of the present case was a matter of discretion. The incident referred to by the appellant was as follows:

"Attorney for the defendant: We offer then all the documentary evidence introduced by the plaintiff in case No. 3061. The defendant now desires, since the court has admitted such parol evidence, to be permitted to amend her answer incorporating therein, as special

defenses and new matter, all that was alleged as such in case No. 3061, as well as all and each of the exceptions and all the facts set forth in that case, in order to make the answer conform to the evidence.

"Plaintiff.—I have no objection and I move for leave to amend the complaint so as to make the same allegations therein as were made in the complaint in that case, such as mistake in the drafting of the deeds introduced in evidence by the defendant.

"Defendant.—Now I move for leave to amend the answer so as to reproduce therein the new matter and special defenses alleged in case No. 3061, as well as the exceptions taken in the said case, in order that the court, when considering the evidence, may have also before it the allegation of such new matter and that it has been submitted in the present case, because in our opinion such secondary evidence is not admissible.

"Plaintiff.—Our motion is for leave to amend the complaint so as to incorporate therein the same matter that appears in that suit and in regard to which the other party has reproduced all the new matters of defense.

"Judge.—I think that the best thing to do is not to allow any amendment.

"Attorney for the defendant.—We take exception."

Although no direct ruling of the judge is shown as to the admission of the record of suit No. 3061, there was no objection on the part of the plaintiff to its introduction in evidence. Both parties applied for leave to amend and their motions were denied. But in reality the record had been offered by both parties and could be taken into consideration by the judge in rendering his decision. We think that the refusal of leave to amend did not prejudice the essential rights of the appellant.

The judgment appealed from must be affirmed.